Ruffin, C. J.
 

 As it would be impossible for a purchaser to ascertain all the latent defects or equities, that might be set up against a bill or note, it was early found indispensable to the credit of negotiable instruments to hold, that a person, who takes them
 
 bona fide
 
 for a valuable consideration, before they are due, and without
 
 *109
 
 notice of their infirmity, is not affected by the failure or the want of a consideration, or even a fraud between previous parties, but may recover the money due thereon. This has been long held in this State,
 
 Black
 
 v.
 
 Bird,
 
 1 Hay. 273 ; and it is needless to cite other authorities, as every treatise on Bills and Notes thus lays down the doctrine. The only exceptions are founded upon the positive enactments of statutes, which forbid the making of certain contracts, and declare the securities void: as, for example, gaming and usurious contracts. Those the law must of necessity hold void in the hands of the most innocent ; otherwise, the statutes would always be evaded by assignments. But that is altered in this State, as to usury, by the act of 1342, c. 2 ; and, with the exceptions of that character, the rule is uniform. It may, probably, be found, that receiving negotiable paper, merely as a security for a pre-existing debt, will not make the creditor a purchaser, as he gives up nothing therefor, unless there be a stipulation for forbearance as a new consideration, or the like. We do not, however, enter into that question. We believe that it has been always understood in this State, that taking paper in payment of a precedent debt, constitutes a purchase of it for value. What is a valuable consideration ? It is generally defined to be a benefit to one party, or labor or loss on the other ; and they both concur in this case. For the holder gives up his debt on one man, as the price of a debt on another transferred to him, and the former debtor of the holder pays his debt therewith, and gets up the securities by which he had before been.bound. We are not aware of any cases to the contrary in England, or in any respectable Courts of this country, except some in New York at one period, which were opposed to those that were earlier, and others that are more recent. Notwithstanding those intermediate decisions, not being, indeed, those of the Court of Errors, Chancellor Kent, in the latest edition of his valuable Commentaries, sec. 44, p. 80, lays the rule down,
 
 *110
 
 as we hold it heve, and in conformity with his own previous opinion, judicially delivered in
 
 Bay
 
 v.
 
 Coddington,
 
 5 John. C. C. 54, that a pre-existing debt is a valuable consideration to sustain a note in the hands of an en-dorsee, who will hold it, unaffected by any equities,.if he take it without notice of any facts which implicate its validity as between the prior parties. He is fully sustained therein by the cases on which he relics, and particularly, by the elaborate reasoning and review of all the previous adjudications on the subject, to be found in the caso of
 
 Brush
 
 v. Scribner, 11 Conn. Rep. 388, and that of
 
 Swift
 
 v.
 
 Tyson,
 
 in the Supreme Court of the United States, 16 Peters’ Ilep. 1. Those decisions seem to us conclusive of the point, and relieve us from the necessity of entering- into a further discussion of it.
 

 Upon the other point, the opinion of the Court is also against the defendant. As the note was made in this State, and is not expressed to be payable at any particular place, and is negotiable by our law, that property, it would seem, became inherent in it as a part of its nature, so as, perhaps, to make it negotiable every where. But, if that be not so, it is, at all events, negotiable in every country, whose laws do not forbid it. Therefore the
 
 onus
 
 was on the defendant to shew the law of Virginia, if that makes it unlawful to negotiate these notes made in another country, which are negotiable by the law of the country of their origin: for no such want of comity can be presumed in one sister State towards another. But if such an endorsement would not bo sustained in a forum of Virginia, in deference to the law of the place of the origin of the contract, and also of the place of its performance, yet' clearly such an endorsement must by ovu- Courts be understood to have been made in reference to the law of this State, and, therefore, be held to entitle the holder to a remedy here against all persons, who here became parties to the instrument. But the case of De
 
 la Chaumette
 
 v.
 
 the Bank of England,
 
 2 Barn, and
 
 *111
 
 Adolp. 385, thus decides the point, as a mere matter of construction of the statute of Anne, and is directly applicable here, as our acts of 1702 and 1780 are taken from the English statute. It was there held, that on a note made in England, and transferred in .France', the holder might have an action in England, although by the law of Prance it was not negotiable there. The words of the Acts do not restrict the negotiability to any particular place, and their object is to enlarge the credit and circulation of paper of this kind ; and therefore the Courts of the State ought to uphold the fair transfer of it any where, as advancing the policy of the statutes as well as conforming to the original nature of the contract.
 

 Pee Curiam. Judgment affirmed.