J. E. LATHAM v. J. D. SPRAGINS' AND EIKHORN BANK AND TRUST COMPANY.

(Filed 28 May, 1913.)

1. Bills and Notes—Drafts, Bills of Lading Attached—Indorser for Value—Lien on Shipment—Purchaser's Rights.

When a vendor of goods consigns them to the purchaser, takes a bill of lading from the carrier, intends to resume control over them, and draws on the purchaser for the price, and delivers the bill of exchange with the bill of lading attached to an indorsee for a valuable consideration, the consignee, upon receipt of the goods, takes them subject to the rights of the holder of the bill of lading to demand payment of the bill of exchange, and cannot retain the price of the goods on account of a debt due to him from the consignor.

2. Bills and Notes—Drafts, Bill of Lading Attached—Banks and Banking—Overdrafts—Deposits—Purchaser for Value—Liens— Evidence—Questions for Jury.

A vendor of goods delivered them to the carrier, received a bill of lading therefor, drew on the purchaser with bill of lading attached to draft, indorsed the draft, deposited it in a bank, which credited his account with the amount. The payee failed or refused to pay the draft, and the bank charged back the draft to the drawer, retained the draft with the attached bill of lading, and claimed to be a purchaser of the draft, and to have a lien on the cotton shipped. There was evidence that at the time of the transaction the drawer's account was overdrawn at the bank, and the amount of the draft went to his credit in the bank in extinguishment of the debt; that there was no agreement between the drawer and the bank that the former would protect the draft in the event it was not paid, but to the contrary; also that the dishonored draft was charged back to the drawer as a matter of bookkeeping: *Held*, if the drawer owed the bank, and the draft was discounted by it and the proceeds applied in discharge of such balance, the bank became the owner of the draft, and a purchaser for value to that extent of the cotton described in the bill of lading; and, further, that charging the draft to the drawer's account was some evidence of the cancellation of the transaction, and payment by the drawer, open to explanation, which was also for the determination of the jury.

APPEAL by interpleader from *Peebles, J.,* at January Term, 1913, of GUILFORD.

Civil action, tried upon these issues:

1. Is the Elkhorn Bank and Trust Company the owner and entitled to the possession of the property in controversy? Answer: No.

2. What damage, if any, is the plaintiff entitled to recover of J. D. Spragins, defendant? Answer: One thousand four hundred sixty-eight dollars and forty-four cents ($1,468.44), with interest from 31 October, 1910.

3. What was the value of the cotton seized and replevied in this action? Answer: Sixteen hundred seventy-three dollars and twenty-two cents ($1,673.22).

From the judgment rendered the interpleader, the Elkhorn Bank and Trust Company, appealed.

*King & Kimball, Thomas S. Beall for plaintiff.*
*S. Clay Williams for defendant, interpleader.*

BROWN, J. The plaintiff recovered judgment in this action against the defendant Spragins for damages in sale of cotton. Plaintiff also sued out in this action a writ of attachment and seized a lot of cotton at Greensboro. The Elkhorn Bank and Trust Company interpleaded, claiming the cotton. Spragins shipped the cotton attached to plaintiff at Greensboro, and drew on him with bill of lading attached. The draft was payable to and discounted by the interpleader, and the net proceeds placed to Spragins' credit. This draft with bill of lading attached was duly presented, and payment being refused, it was protested and returned to the interpleader, and charged up to Spragins' account.

The interpleader requested the court to charge the jury as follows: "If you believe the evidence of the witnesses J. D. Spragins and W. E. Barkman, whose depositions have been read to you on behalf of the interpleader, you shall answer the first issue 'Yes.'" This was refused, and interpleader excepted.

His Honor charged as follows: "The bank has shown no evidence sufficient to show that they were the owners of that cotton. They were not out any money. Spragins owed them already, and they just took that draft and credited his account with it, and when it came back unpaid, they charged it back

to him, and they were in the same fix after the transaction as before, and the Supreme Court has held that don't constitute a bank a purchaser for consideration, and you will answer that issue 'No.'"

To this charge the interpleader excepted.

It is well settled that when the vendor of goods consigns them to the purchaser, taking a bill of lading from the carrier and intending to resume the right of control over them, at the same time draws upon the purchaser for the price and delivers the bill of exchange with the bill of lading attached, to an indorsee for a valuable consideration, the consignee, upon receipt of the goods, takes them subject to the rights of the holder of the bill of lading to demand payment of the bill of exchange, and cannot retain the price of the goods on account of a debt due to him from the consignor. *Manufacturing Co. v. Tierney,* 133 N. C., 636; *Mason v. Cotton Co.,* 148 N. C., 498.

It is contended, however, that in any view of the evidence the interpleader is not a *bona fide* purchaser for value, but that the transaction constituted merely a bailment for collection.

The cashier, Barkman, testifies as follows: "On 8 September, 1910, I had a transaction in my office at said bank with Mr. J. D. Spragins, in regard to a cotton draft drawn on J. E. Latham, at Greensboro, N. C., on that date. At that time the five bills of lading referred to by Mr. Spragins in his testimony and marked 'Exhibits A, B, C, D, and E,' were delivered to me by Mr. Spragins, attached to the draft for $1,793.35, drawn by said J. D. Spragins on J. E. Latham, Greensboro, N. C.

"The draft delivered to me was the same referred to by Mr. Spragins in his testimony and marked 'Exhibit F.' The bills of lading were assigned to me and delivered with the draft, and I paid J. D. Spragins the sum of $1,793.35, less the usual exchange for the same.

"We had no agreement of any kind. I took it as a cash item as any other bill of lading, and forwarded it. Neither the bank nor any one for it has received payment of the draft in question. It was protested and returned."

The same witness further testified: "At the time I paid Mr. Spragins $1,793.35 (for the draft) with bills of lading attached, he was overdrawn $1,636.86, which was money which the bank furnished him to buy cotton with. When I received the draft from Mr. Spragins I credited his account with it, and when the draft was protested, I charged back to his account the amount of the draft."

The witness also stated that in recharging Mr. Spragins' account with the amount of the protested draft they were following out their system of bookkeeping. "It was recharged to Mr. Spragins' account to keep our records clear as to the transaction and make disposition of this item. It is still charged to Mr. Spragins' account, and has never been paid."

Defendant Spragins testified: "After drawing said draft and attaching the bills of lading thereto, I delivered the draft and bills of lading to Mr. W. E. Barkman, cashier of the Elkhorn Bank and Trust Company. The only terms were that Mr. Barkman either give me cash or credit for it. We had no agreement; it was taken as a cash transaction, and the Elkhorn Bank and Trust Company placed that amount of money to my credit."

The same witness further testified that he had no agreement to the effect that he would protect the bank in the event that the plaintiff is successful in asserting his claim against the property in controversy in this action. He also stated that when the bank accepted the draft and bills of lading he considered the deal closed so far as he was concerned, and that he did not regard himself under any legal obligation to pay the bank.

We are of opinion that his Honor was correct in refusing the interpleader's prayer for instruction, but that he was wrong in directing as a matter of law that the jury answer the first issue "No."

The evidence tends to prove that when Spragins drew the draft with bill of lading attached, payable to the interpleader, and discounted it, he was indebted to the interpleader, and that the net proceeds went to Spragins' credit in extinguishment of his debt.

If those facts are true, then the bank became a purchaser for value, and acquired title to the cotton as security for the bill of exchange discounted. 6 A. and E., 298; 7 Cyc., 929; *Bank v. McNair,* 114 N. C., 342.

If at the time Spragins had owed the bank nothing, the case would be different, for the mere discounting and crediting of the amount on the depositor's account, without making payment or incurring any increased obligation, is not sufficient to make the bank a purchaser for value.

Nor do we think that the mere fact that when the draft was returned unpaid, the cashier had it charged up to Spragins' account, as a matter of law, necessarily deprives the bank of the security of the draft and bill of lading.

If at the time it was charged up, Spragins had a balance to his credit, sufficient to pay the draft, the charging it up would have satisfied the draft, and extinguished the lien on the cotton.

But Spragins had nothing to his credit with which to pay the draft, for the cashier testifies that the bank has never been paid, and that he charged up the draft simply as a matter of bookkeeping.

The draft and bill of lading attached has not been surrendered by the bank to Spragins or any one else.

We do not dispute the proposition that where there is a general agreement between the bank and its customer, that if drafts, deposited by the customer for his credit, are returned unpaid, they shall be charged back to the customer's account, and returned to him, this constitutes only an agency for collection. *Davis v. Lumber Co.,* 130 N. C., 176; *Cotton Mills v. Weil,* 129 N. C., 452. But the facts testified to in this case take it out of that general rule and differentiate it from those cases.

If Spragins was in debt to the bank, and the draft was discounted by it and the proceeds applied in discharge of such balance, the bank became the owner of the draft, and as a purchaser for value to that extent of the cotton described in the bills of lading.

The fact that upon return of the draft protested, the cashier charged it up to Spragins' account, is some evidence to the jury

of a cancellation of the transaction, and of a payment of the protested draft by Spragins, but it is not conclusive evidence, and is open to explanation.

If Spragins had nothing to his credit with which to pay the draft, and the bank continued to hold, as its property, the draft and bills of lading, it would not be a payment of the draft or a cancellation of the original transaction.

In directing a verdict for the plaintiff upon the first issue, his Honor erred.

New trial.