BRANCH BANKING AND TRUST COMPANY, RECEIVER OF BAILEY BANK-ING COMPANY, v. THOMAS H. BOYKIN, A. H. BOYKIN ET AL.

(Filed 6 October, 1926.)

**1. Bills and Notes—Principal and Surety—Parol Evidence—Equities—Innocent Purchaser for Value.**

As between the original payee and those whose names appear to have been signed as makers of a negotiable instrument, it may be shown by parol evidence that one or more of those who signed as makers signed in fact as surety for the other or others, but not as against an endorser, who acquired the instrument for value and holds innocently without notice of such relationship.

**2. Same—Mortgages—Liens—Equity—Subrogation—Parol Evidence.**

One whose name appears as one of the makers upon a negotiable note secured by a first mortgage lien, may show by parol evidence as against a subsequently registered mortgage, that he had signed as surety, and was entitled to subrogation to the rights of the mortgagee holding the first lien on the land subject to the two encumbrances.

**3. Same—Payment—Assignment to the Use of Surety—Cancellation.**

In order for one signing a negotiable instrument secured by a first lien or mortgage to pay off the indebtedness and retain his lien as against

those holding a lien under a subsequent mortgage, he must have the instrument endorsed to another for his use, and by canceling the mortgage security of record he loses his right, and only the relationship of an unsecured creditor exists.

**4. Same—Judgments.**

Where the payee of a note secured by a first mortgage note on the maker's land has reduced it to judgment in his suit to foreclose, and there appears thereon apparently as a comaker one who claims to have signed only as surety and who has paid off the mortgage indebtedness, the mortgage indebtedness merges into the judgment, and for the alleged surety who has discharged the indebtedness to be entitled to the equity of subrogation to the mortgagee's right, he must further show that the judgment had been transferred to another to his own use, and a payment thereof by him destroys this right.

CIVIL ACTION before *Calvert, J.,* at April Term, 1926, of NASH.

On 24 October, 1919, I. F. Finch conveyed to A. H. Boykin lots 2 and 3 of the Finch land. A. H. Boykin paid for this land $1,396.00 in cash and executed and delivered to Finch notes for the balance of the purchase money in the sum of $5,584.00, which said notes were secured by a first mortgage upon said lots. On 19 December, 1919, A. H. Boykin and Thomas H. Boykin, his brother, executed to the Bailey Banking Company their promissory note for $14,090.00, and in order to secure same executed and delivered a mortgage upon said lots 2 and 3, together with other property.

Thereafter, on 2 January, 1920, A. H. Boykin sold to H. G. Sanders lot No. 3 of said Finch land, Sanders paying $686.00 cash and executing and delivering to A. H. Boykin notes for the balance of the purchase price in the sum of $2,328.00, said notes being payable to I. F. Finch. Thereafter, I. F. Finch canceled his mortgage on lots 2 and 3, which was a first lien thereon, and accepted in satisfaction thereof the said notes of Sanders for $2,328.00 and a second mortgage or deed of trust on said lot No. 2 of the Finch land. This deed of trust from A. H. Boykin to C. H. Glover, trustee, secured notes aggregating $3,260.40, being the balance due Finch on the purchase price of lot No. 2. It appears from the record that neither H. G. Sanders nor I. F. Finch was aware of the existence and registration of the mortgage to Bailey Banking Co., securing the said note for $14,090.00. Thereafter the Bailey Banking Co. became insolvent and the plaintiffs, Branch Banking & Trust Co., was appointed receiver thereof. The receiver instituted an action to recover judgment against A. H. Boykin and Thomas H. Boykin on the $14,090.00 note and to foreclose all mortgages and collaterals securing this note. S. G. Mewborn was appointed commissioner to make the sale and advertised all the property, including lots 2 and 3 of the Finch land. Thereupon Sanders and Finch instituted an action

against A. H. Boykin and the receiver of the Bailey Banking Co., restraining the sale of lots 2 and 3 of the Finch land. At this stage of the proceeding a consent order was entered, consolidating both actions, and a consent judgment entered in accordance with which Mewborn, the commissioner, was authorized to sell lots 2 and 3 of the Finch land and hold the proceeds pending the determination of the rights of the parties to the proceeds. There was an unpaid balance due upon the judgment against A. H. Boykin and Thomas H. Boykin on the $14,090.00 note in excess of the amount received from the sale of lots 2 and 3 of the Finch land. Thomas H. Boykin paid the receiver, Branch Banking & Trust Co., the total amount due on the note of $14,090.00, and the receiver thereupon delivered to Thomas H. Boykin the note and mortgage securing the same, and Thomas H. Boykin had this mortgage securing said note for $14,-090.00 canceled on the record. This cancellation of said mortgage was subsequent to the rendition of the foreclosure judgment before mentioned against A. H. Boykin and Thomas H. Boykin for $14,090.00.

So that, the relationship of the parties to this transaction at the time the said mortgage was canceled, is substantially as follows: 1. The said mortgage securing note for $14,090.00 executed to Bailey Banking Co. by A. H. Boykin and Thomas H. Boykin constituted a first lien upon lots 2 and 3 of the Finch land together with other property. 2. At the time of the cancellation of said deed of trust and the payment of said note, this mortgage indebtedness had been reduced to judgment. 3. H. G. Sanders had a deed for lot No. 3 of the Finch land subject to said deed of trust. 4. I. F. Finch held a second mortgage on lot No. 2 to secure an indebtedness of $3,260.00.

Lot No. 3, at the commissioner's sale, sold for $670.00, and lot No. 2 sold for $2,000.00. Thomas H. Boykin claims that he was surety for A. H. Boykin, his brother, and that, by the application of the equitable principle of subrogation, he is entitled to said $2,670.00, proceeds of the sale of said lots 2 and 3. Sanders claims $670.00, proceeds of the sale of lot No. 3, by virtue of the fact that A. H. Boykin gave him a warranty deed for said land. Finch claims the $2,000.00, proceeds of sale of lot No. 2 by reason of the fact that he had a deed of trust upon said lot. Sanders and Finch deny that Thomas H. Boykin was surety on the $14,090.00 note and contend that, even though he was surety, the cancellation of the mortgage securing same by Thomas H. Boykin destroyed the security and left him in a position of general creditor only. The mortgage, executed 1 December, 1919, by A. H. Boykin and Thomas H. Boykin to the Bailey Banking Co. to secure the note of $14,090.00 was in the usual form and contained this recital: "That whereas, said parties of the first part are justly indebted to the parties of the second part in the sum of $14,090.00, etc." At the trial Thomas H. Boykin offered

evidence tending to show that he was surety on said note for $14,090.00. This evidence was excluded by the court and judgment rendered that the commissioner, after paying certain costs, should disburse the proceeds of the sale of lots 2 and 3 of the Finch land as follows: "The proceeds of lot No. 3, he will pay to H. G. Sanders or H. D. Cooley, his attorney of record, and the proceeds of lot No. 2 he will pay to I. F. Finch, or to I. T. Valentine, his attorney of record." The judgment further states that "the court being of the opinion that the defendant, Thomas Boykin, cannot show by parol evidence as against H. G. Sanders and I. F. Finch that he was surety for A. H. Boykin upon the note to the Bailey Banking Co. as set out in the pleadings; there were no issues to be submitted to the jury arising from the pleadings, etc."

From the foregoing judgment defendant, Thomas H. Boykin, appealed.

*Cooley & Bone, I. T. Valentine for plaintiff.*
*Connor & Hill for defendant.*

BROGDEN, J. Two propositions of law are presented by the record, as follows:

1. Can Thomas H. Boykin show by parol evidence that he signed the $14,090.00 note to Bailey Banking Co. as surety for his brother, A. H. Boykin?

2. Does Thomas H. Boykin lose his right of subrogation by reason of cancellation of the mortgage securing the $14,090.00 note?

In determining the merits of the first proposition the general rule is that in the hands of an original payee an endorsement may be shown to be upon certain conditions; but a *bona fide* holder for value before maturity and without notice is not affected by any equities existing between the original parties. *Sykes v. Everett,* 167 N. C., 600.

"It is well settled that the agreement upon which the endorser of another's obligation signed, and the liability which he intended to assume, may (at least between the original parties, or those parties and holders with notice) be shown by parol evidence, and he will be held only according to such agreement and intention." *Southerland v. Fremont,* 107 N. C., 570.

In *Williams v. Lewis,* 158 N. C., 571, it was held that "as between signers of a negotiable instrument it may be shown who is principal and who is surety provided the rights of the payee are not injuriously affected." And, further, in *Smith v. Carr,* 128 N. C., 150, it is said: "However, their relationships, whether principal or surety, when questioned, become a matter of fact to be established by evidence, either written or oral, and found by the jury." *Forbes v. Sheppard,* 98 N. C.,

111; *Foster v. Davis,* 175 N. C., 541; *Kennedy v. Trust Co.,* 180 N. C., 225; *Gillam v. Walker,* 189 N. C., 189.

It will be observed that neither Finch nor Sanders was a party to the $14,090.00 note paid by Thomas H. Boykin and had no relationship whatever thereto. Sanders held a deed for one of the lots executed subsequently to the execution of the $14,090.00 note and the registration of the mortgage securing it. Finch held a second deed of trust upon lot No. 2, which was subject to the rights of the parties in and to the $14,090.00 note and the mortgage securing it.

So that, the rights and equities of both Sanders and Finch were subject to the rights of Thomas H. Boykin for the reason that both the deed of Sanders and the deed of trust of Finch were executed subsequently to the note and mortgage of $14,090.00 to Bailey Banking Co. Therefore, it is permissible, under the law, for Thomas H. Boykin to show by parol evidence that he was surety on the $14,090.00 note. If it should be found by the jury that he was surety on said note, then, nothing else appearing he would be entitled to the equity of subrogation, having discharged the note out of his own funds.

Finch and Sanders contend that, even if it be established that Thomas H. Boykin was a surety, his right of subrogation is destroyed by reason of the fact that he procured the cancellation of the mortgage securing the $14,090.00 note. The principle of law applicable to this contention is thus stated by *Justice Hoke* in *Davie v. Sprinkle,* 180 N. C., 582: "As to collateral paper held by the creditor, the surety, on payment of the principal debt, is ordinarily entitled to the full equitable doctrine of subrogation, but if he pays the principal debt on which he is himself bound, whether by judgment bond or other, without the assignment as suggested, the original obligation is extinguished and he becomes the simple contract creditor of the principal." *Hanner v. Douglass,* 57 N. C., 265; *Liles v. Rogers,* 113 N. C., 200; *Tripp v. Harris,* 154 N. C., 296; *Liverman v. Cahoon,* 156 N. C., 187.

Upon this principle of law, Thomas H. Boykin, having failed to have the mortgage assigned for his benefit, would lose his right of subrogation so far as the mortgage is concerned,.but it appears from the record that the Bailey Banking Co. had reduced its note of $14,090.00 to judgment in a proceeding to foreclose the mortgage securing same. When this judgment was rendered the note, as evidence of indebtedness, was extinguished by the higher evidence of record. *Gibson v. Smith,* 63 N. C., 103. In other words, the judgment merged the debt upon which it was rendered. The rule is thus expressed in *Wagner v. Cochrane,* 35 Ill., 152, quoted with approval by *Ruffin, J.,* in *Grant v. Burgwyn,* 88 N. C., 99: "It is said that by judgment, the contract upon which it is based becomes entirely merged—loses all its vitality—and ceases to be obliga-

tory upon the parties. Its force and effect are wholly expended, and all remaining liability is transferred to the judgment, which then becomes the evidence, and the only evidence that can be used in a court, of the existence of the original debt."

Applying this rule of law to the case under consideration, we hold that the cancellation of the mortgage, after the debt had become merged in a judgment, did not of itself destroy the right of subrogation. It does not appear from the record whether the judgment has been canceled or whether it has been assigned for the benefit of Thomas H. Boykin. Neither does the date or form of the judgment appear.

We therefore express no opinion as to the rights of the parties under the judgment. An expression of opinion as to this matter in the present state of the record would tend to·confuse rather than to clarify.

