G. C. DENTON (HELEN B. DENTON, ADMINISTRATRIX OF G. C. DENTON, DECEASED), v. SHENANDOAH MILLING COMPANY, INCORPORATED, AND FIRST NATIONAL BANK OF HARRISONBURG, VIRGINIA.

(Filed 12 July, 1933.)

**1. Bills and Notes B c—**

The purchaser of a draft is one who acquires unconditional title thereto, with no agreement, expressed or implied, to charge the draft back if it is not paid, and the right to charge the draft back may be inferred from the course of dealing between the parties.

**2. Same: Evidence K a—Testimony held incompetent as invading province of jury and as being mere conclusion of witness.**

Where the determinative question in an action is whether the intervener is the purchaser of a draft or an agent for its collection, testimony of the intervener's agent that it was a purchaser is properly excluded as invading the province of the jury, and the facts relating to the intervener's acquisition of the paper not being in dispute, such testimony is also incompetent as being a mere conclusion of the witness.

**3. Bills and Notes B c—**

Where the evidence is conflicting as to whether a party is a purchaser of a draft or an agent for its collection the question is one for the jury, but where the evidence is susceptible of only one interpretation it is a question of law for the court.

**4. Same—Evidence in this case held to show as matter of law that bank was collecting agent for draft and not purchaser thereof.**

> Where the uncontradicted evidence is to the effect that a customer of a bank daily sent the bank drafts containing a notation that they were not to be considered as a deposit but were to be accounted for upon collection to the customer, the drawer, that the bank credited the drawer's account therewith and allowed him to check thereon immediately, but customarily charged the drafts back to the drawer's account if they were not paid: *Held*, the evidence discloses as a matter of law that the bank was an agent for the collection of the drafts and not a purchaser thereof, and where the proceeds of some of the drafts have been attached by a creditor of the drawer, the bank may not successfully intervene and claim title thereto.

CIVIL ACTION, before *Cowper, Special Judge,* at Special December Term, 1932, of MECKLENBURG.

On 20 May, 1931, the Shenandoah Milling Company, Incorporated, drew a draft, as follows: "The First National Bank—68-155. Harrisonburg, Va. 20 May, 1931. At sight pay to the order of the First National Bank of Harrisonburg, Va., at Harrisonburg, Va.—$402.00—four hundred two and 00/100 dollars. Value received and charge to the account of Shenandoah Milling Company, Incorporated. By: F. I. Reim—To Goodwill Stores Deposit and Savings Bank, North Wilkesboro, N. C. Stamped on the back: Collection—Pay to the order of any bank or banker prior endorsement guaranteed 21 May, 1931. First National Bank, 68-155 Harrisonburg, Va.—68-155—Wm. H. Byrd, cashier." "This draft is a cash item and is not to be treated as a deposit. The funds obtained through its collection are to be accounted for to the drawer, and are not to be commingled with the other funds of collecting bank." On 29 May, 1931, the Shenandoah Milling Company drew the following draft: "The First National Bank—68-155. Harrisonburg, Va. 29 May, 1931. At sight pay to the order of the First National Bank of Harrisonburg at Harrisonburg, Va.—$1,008.24—one thousand eight and 24/100 dollars—Value received and charge to the account of Shenandoah Milling Company, Incorporated. By F. I. Reim—To Cash and Carry Stores—Elkin National Bank, Elkin, N. C. Stamped on back: Collection—pay to the order of any bank or banker—prior endorsements guaranteed—1 June, 1931—First National Bank, 68-155 Harrisonburg, Va.—68-155—Wm. H. Byrd, cashier." "This draft is a cash item, and is not to be treated as a deposit. The funds obtained through its collection are to be accounted for to the drawer, and are not to be commingled with the other funds of collecting bank."

The Goodwill Store paid the $402.00 draft, and before the proceeds were remitted, the plaintiff, G. C. Denton, claiming to be a creditor of Shenandoah Milling Company, sued out an attachment against said Milling Company and levied upon said sum of money. In like manner

the Cash and Carry Feed Stores draft, amounting to $1,008.24, was paid to the Elkin National Bank and was attached by the plaintiff. The First National Bank of Harrisonburg, Virginia, intervened, claiming the proceeds of the draft by reason of the purchase of the same from the Shenandoah Milling Company. The cashier of the intervening bank testified that the bank acquired possession of these drafts "by purchase from the Shenandoah Milling Company, Incorporated. The Shenandoah Milling Company, Incorporated, is a customer of our bank and it maintains an account with us at all times. It is true that we have acquired a number of other drafts from the Shenandoah Milling Company, Incorporated, in the course of its business relationship. We get drafts from them practically daily. When those drafts are forwarded to us they are placed to the credit of Shenandoah Milling Company and are forwarded to the respective places for collection. They are, of course, endorsed to us. In the case here in question, there was a bill of lading attached to each of the drafts. The amount of those drafts was for the purchase price of flour, and the bills of lading evidencing the ownership of the flour were attached to the drafts. The drafts were endorsed to us and the amount thereof was credited to the Shenandoah Milling Company. We forwarded the drafts to the respective banks of North Carolina for presentation to the drawee. . . . The place of business of Shenandoah Milling Company is approximately twenty-five miles from our bank. They have been doing business with our banks . . . for a period longer than ten years. I do not think I would have a right to say approximately, about how much cash balance they carry, usually with us, or what is their average daily balance, other than to say that they maintain a satisfactory account with us. Their deposit of drafts for collection with our bank is a matter of practically daily occurrence. These drafts are usually credited to their account; and they are permitted to draw on the proceeds of these drafts without any further question." In answer to questions propounded on cross-examination with reference to the course of dealing between the Milling Company and the bank, in the event the drafts were unpaid, the witness said: "In a case similar to this one, it is necessary for us to communicate with the Shenandoah Milling Company, Incorporated, and make some arrangements regarding the carrying of the item until such time as it is taken care of. (Q.) Suppose, Mr. Byrd, a draft is definitely unpaid and refused, what is the course of the bank? Do they charge that draft back to the account of the Shenandoah Milling Company? (A.) Yes, sir, and return the bill of lading covering the security for the draft to the Shenandoah Milling Company, Incorporated, together with the draft." In response to another question as to who would bear the expense of litigation, the witness said: "We hope for it to be paid by the Shenandoah Milling Company."

The treasurer of the Milling Company testified that "our custom in our handling of drafts of this sort in our dealings with the First National Bank is that we mail them to the bank and they give us credit for them. They notify us the next day of the receipt of the draft. . . . We drew against that credit given us without waiting to hear anything from the North Carolina bank. . . . It is almost a daily occurrence for our company to deposit for collection drafts which are credited to the company's account in Mr. Byrd's bank and then checked on. . . . In case a draft comes back uncollected in regard to our account, as a rule we ask the bank to get the draft and the bill of lading back. The amount of this draft is customarily either charged back to our account or we give them a check for it. I meant by that last answer that there are times when our balance on deposit at bank is not sufficient to take care of a draft that we have transferred to them. If all the drafts we have outstanding were returned today, Mr. Byrd would be after us in a very few minutes."

The plaintiff offered no evidence, and at the conclusion of the evidence for the intervener the trial judge, being of the opinion that the bank had no interest in either of the drafts, ordered and adjudged that the plaintiff was entitled to recover the proceeds thereof. From such judgment the intervener appealed.

*Samuel R. McClurd and Tillett, Tillett & Kennedy for plaintiff.*

*Hunton, Williams, Anderson, Gay & Moore, E. R. Preston, H. Haywood Robbins, Jr., T. Justin Moore and Stephen H. Simms for intervener.*

BROGDEN, J. Was there sufficient evidence to be submitted to the jury as to whether the intervening bank was a purchaser and owner of the drafts in controversy?

The general rule recognized and adopted by the majority of the American courts, and which prevails in this jurisdiction is "that if a bank discounts a paper and places the amount less the discount to the credit of the endorser with the right to check on it and reserves the right to charge back the amount if the paper is not paid, by express agreement or one implied from the course of dealing, and not by reason of liability on the endorsement, the bank is an agent for collection and not a purchaser." By inverting the proposition, it is clear that in cases of this type, a purchaser of the draft is one who acquires the unconditional title thereto, with no agreement, express or implied, to charge the paper back if it is not paid. This Court and others generally have declared that an implied agreement to charge back may be inferred from a relevant course of dealing between the parties. Consequently, the first inquiry is whether the intervener purchased the instrument.

The cashier of the intervening bank testified that his bank purchased the draft and owned it at the time the suit was instituted. This testimony was excluded, apparently upon the theory that the purchase and ownership of the draft were the identical questions to be determined by the jury. Such ruling upon the facts disclosed, was correct. *Marshall v. Telephone Co.,* 181 N. C., 292, 106 S. E., 818; *Temple v. LaBerge,* 184 N. C., 252, 114 S. E., 166; *Trust Co. v. Store Co.,* 193 N. C., 122, 136 S. E., 289. Furthermore, the facts relating to the acquisition of the paper are not in dispute. Hence the excluded testimony was no more than the conclusion of the witness. *Temple v. LaBerge, supra.*

The line of judicial thought in this State, determining whether a bank is a purchaser or collecting agent, is composed of two branches. One branch is made up of those cases in which the evidence is conflicting, equivocal and contradictory. In such event an appropriate issue must be submitted to a jury. See *Worth v. Feed Co.,* 172 N. C., 335, 90 S. E., 295; *Sterling Mills v. Milling Co.,* 184 N. C., 461, 114 S. E., 756; *Bank v. Monroe,* 188 N. C., 446, 124 S. E., 741. The other branch is composed of cases in which the evidence in its entirety seems susceptible of only one construction, interpretation or conclusion. In such event the question as to whether the bank is a purchaser becomes one of law and governed by the instruction of the trial judge. *Temple v. LaBerge,* 184 N. C., 252. Therefore, the solution of the case at bar depends upon whether the evidence liberally interpreted classifies the action as belonging to the line represented by *Temple v. LaBerge, supra,* or the line represented by *Bank v. Monroe, supra.* Hence, it is necessary to examine the evidence. At the outset, it is to be noted that the intervening bank was the payee specified in both instruments, and each of said drafts contained upon its face the notation that it was "not to be treated as a deposit. The funds obtained through its collection are to be accounted for to the drawer," etc. The drawer was the Shenandoah Milling Company.

The cashier of the bank testified expressly that if the drafts were refused and unpaid that they would be charged back to the account of the Shenandoah Milling Company, the bill of lading and the draft being returned to said company. The treasurer of the Milling Company said that "in case the draft comes back uncollected in regard to our account, as a rule, we ask the bank to get the draft and bill of lading back. The amount of this draft is customarily either charged back to our account or we give them a check for it."

The court is of the opinion that the undisputed evidence classifies the case within the principle announced in *Temple v. LaBerge, supra,* and hence the ruling of the trial judge was correct.

Affirmed.