STATE PLANTERS BANK v. COURTESY MOTORS, INC.

(Filed 12 June, 1959.)

1. Banks and Banking § 9:    Bills and Notes § 9—

A depositor and bank of deposit are free to make their own contract in respect to deposits so long as the rights of third parties are not injuriously· affected and the contract is not contrary to law or public policy, and whether the contract between them constitutes the bank of deposit a collecting agent or the owner of cheques deposited is to be determined in accordance with the mutual intent at the time the deposit is made.

BANK *v.* COURTESY MOTORS.

## 2. Contracts § 12—

The heart of a contract is the intention of the parties.

## 3. Banks and Banking § 9:  Bills and Notes § 9—

The mere fact that the bank of deposit credits a cheque to the account of the depositor, without more, does not constitute the bank a holder in due course of the cheque. If the bank of deposit permits the depositor to withdraw completely or otherwise completely employ the proceeds of the cheque deposited in advance of collection, the bank of deposit, in the absence of notice of any defect or infirmity in the cheque or in the title of the depositor, is a holder in due course, in the absence of an agreement to the contrary. G. S. 25-31.

## 4. Same—

The agreement between the depositor and the bank of deposit as set forth in the deposit slip to the effect that the bank of deposit should be only an agent for collection of cheques deposited may be waived.

## 5. Same—  Evidence held to raise issue of fact as to whether bank of deposit was purchaser or agent for collection of cheque deposited.

Evidence tending to show that a depositor deposited a cheque, using a deposit slip stating that the bank should be solely an agent for collection of items deposited, but that at the time the deposit was made it was the agreement and understanding of the parties that the amount of the cheque so deposited should be used immediately to pay cheques drawn on his account by the depositor and the depositor thus given the immediate benefit of the entire amount of the cheque, with evidence that the amount of the depositor's account was at that time and thereafter wholly insufficient in amount to permit the bank of deposit to charge the account with the cheque if it were not collected, that the cheque was complete, regular and negotiable on its face and endorsed in blank, and that the bank had no notice of any infirmity in the cheque or in the title of the depositor, raises an issue of fact for the jury, or, upon waiver of jury trial, for the judge, as to whether the bank was a purchaser for value and holder in due course of the cheque.

## 6. Bills and Notes § 17—

Where the bank of deposit is a purchaser and holder in due course of a negotiable cheque deposited by the payee, the bank can recover thereon as against the drawer who had stopped payment on the cheque, notwithstanding that the drawer had a complete defense as against the payee.

## 7. Same—

Unless the negotiable instrument is void by application of statute, legal incapacity of the parties to contract, or fraud in the *factum*, a *bona fide* holder thereof in due course without notice holds title valid as against all the world, G.S. 25-58, free from any defense available as between the original parties.

**8. Appeal and Error § 49—**

Where the findings of fact in a trial by the court under agreement are supported by competent evidence, they are as conclusive as a verdict of a jury, and when such findings support the court's conclusions of law the judgment based thereon must be affirmed.

APPEAL by defendant from *Crissman, J.,* 6 October Term 1958 of STOKES.

Civil action to recover the amount of a cheque negotiable in form allegedly owned by plaintiff as a holder in due course.

The parties, pursuant to G.S. 1-184, 1-185, waived a trial by jury, and agreed that the Judge might find the facts, make conclusions of law, and render judgment thereon.

### SUMMARY OF FINDINGS OF FACT.

Plaintiff is a domestic corporation, with its principal office in Walnut Cove, Stokes County, North Carolina. Defendant is a domestic corporation engaged in the automobile business, with its principal place of business in Charlotte, Mecklenburg County, North Carolina.

Walnut Cove Motor Company, hereafter called Motor Company, a domestic corporation with its principal place of business in Walnut Cove, maintained a checking account with plaintiff, and at the close of business on 17 October 1957 had a balance in this account of $712.62. At the same time plaintiff had received cheques in excess of $12,000.00 drawn on it by Motor Company. On the afternoon of that day, and on the following morning, the president of plaintiff advised the president of Motor Company that plaintiff had received these cheques of defendant in excess of $12,000.00, and that unless Motor Company delivered sufficient money to cover these cheques by one o'clock p. m. on the following day, the cheques would be returned dishonored to the forwarding banks for lack of sufficient funds to pay them. The president of Motor Company on both occasions told the president of plaintiff that he would deliver to plaintiff by the close of business the following day money to pay these cheques.

On the morning of 18 October 1957 defendant at its place of business in Charlotte bought from Motor Company five new Ford automobiles for $11,142.61, and paid for them by its cheque in that amount drawn on American Trust Company of Charlotte payable to Motor Company. About one o'clock p. m. on the same day the president of Motor Company delivered currency and other cheques and this cheque for $11,142.61, with the words "Walnut Cove Motor Company, Walnut Cove, North Carolina" stamped on the back thereof, with two deposit slips in duplicate, to plaintiff. The total amount of the deposit was $11,443.77. The receiving teller of plaintiff initialed

one of the deposit slips, and returned it to the president of Motor Company. This deposit slip contains the following language: "In receiving items for deposit or collection, this Bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This Bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This Bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this Bank not good at close of business on day deposited." The bank book of Motor Company shows an entry of $11,443.77 on 18 October 1957. The ledger sheet kept by plaintiff of Motor Company's account shows a deposit of $11,443.77 on 18 October 1957. Solely as the result of the delivery of this cheque for $11,142.61 and in reliance thereon, plaintiff on the afternoon of that day and on the following morning honored and paid the cheques of Motor Company which it had on hand at the close of business on 17 October 1957 by the issuance of cheques drawn by itself on its account at the Wachovia Bank & Trust Company payable to the forwarding banks, thereby exhausting Motor Company's balance of $712.61 and the cheque for $11,142.61.

The automobiles sold by Motor Company to defendant had been mortgaged prior thereto by it to Wachovia Bank & Trust Company in the amount of $11,195.29, which mortgages were recorded in the Register of Deeds Office for Stokes County during the period 26 August 1957 through 14 October 1957. Upon learning of these mortgages defendant stopped payment of its cheque to Motor Company, and as a result of such stop payment order American Trust Company upon presentment of the cheque returned it unpaid to plaintiff.

On 21 October 1957 the president of Motor Company left the State, and immediately thereafter Motor Company was placed in receivership.

Defendant has refused to pay its cheque, though demand for payment has been made by plaintiff.

On other occasions prior to 17 October 1957 Motor Company had overdrawn its account with plaintiff, and similar conversations occurred as on 17 October 1957 between plaintiff and Motor Company. On those occasions upon delivery of cheques payable to Motor Company and duly endorsed by it to plaintiff, plaintiff honored the cheques

of Motor Company then on hand, without waiting for the delivered cheques to be honored by the banks upon which they were drawn.

When the president of Motor Company came into the plaintiff bank about one o'clock p. m. on 18 October 1957, as set forth above, the president of plaintiff told him that since he had talked with him earlier that day additional cheques totaling more than $10,000.00 drawn by Motor Company on plaintiff had been presented for payment, and that Motor Company must deposit sufficient money by noon of the following day to pay these cheques, or they would be dishonored. The president of Motor Company said he would try to deposit sufficient funds within time to pay these additional cheques, but failed to do so, and plaintiff dishonored said cheques for lack of sufficient funds of Motor Company to pay them. At the close of business on 19 October 1957 Motor Company had on deposit with plaintiff $274.35, and thereafter its deposit never exceeded $124.00.

It was the intention of plaintiff and Motor Company, when defendant's cheque for $11,142.61 payable to Motor Company was duly endorsed and delivered by Motor Company to plaintiff, that this cheque would become the exclusive property of plaintiff, that title thereto should pass unconditionally to plaintiff, that such transaction constituted a sale of this cheque to plaintiff for value, and plaintiff became the owner thereof. That this cheque for $11,142.61 is complete and regular on its face; that plaintiff became the holder and owner of this cheque before it was overdue and without notice of any previous dishonor; that plaintiff took this cheque in good faith and for value; that this cheque was endorsed in blank by Motor Company and delivered to plaintiff, and was purchased by plaintiff, who at the time had no notice of any infirmity in this cheque or defect in the title of Motor Company.

## CONCLUSIONS OF LAW.

One. Plaintiff is a holder in due course of the cheque for $11,142.61 made and issued by defendant.

Two. Defendant is liable to plaintiff for the full amount of this cheque for $11,142.61, with interest at 6% per annum from 22 October 1957.

Whereupon, the Judge entered judgment that plaintiff have and recover from defendant the sum of $11,142.61, with interest at the rate of 6% per annum from 22 October 1957 until paid, together with the costs.

From the judgment defendant appeals.

---

BANK v. COURTESY MOTORS.

---

*Vaughn, Hudson, Ferrell & Carter and Robert G. Stockton, R. M. Stockton, Jr. and Norwood Robinson for plaintiff, appellee.*

*Womble, Carlyle, Sandridge & Rice and Wade M. Gallant, Jr. for defendant, appellant.*

PARKER, J.   Plaintiff alleges that it is the owner and holder in due course of the cheque sued on, and entitled to enforce payment of it for the full amount against defendant. Defendant stopped payment on its cheque for $11,142.61 issued to Motor Company and duly endorsed in blank by it, and alleges as a defense of this civil action that plaintiff is not the owner and holder in due course of the cheque, but was acting only as a collecting agent for Motor Company, against whom defendant claims it has a good defense.

Pursuant to the provisions of G.S. 1-184, 1-185 the parties waived a jury trial. The Judge's findings of fact are set forth in ten numbered paragraphs. His conclusions of law are set forth in two numbered paragraphs. Defendant has no assignment of error as to the first eight findings of fact.

Defendant does assign as errors the ninth and tenth findings of fact, the two conclusions of law, and the judgment entered. The ninth and tenth findings of fact are in substance as follows: It was the intention of plaintiff and Motor Company, when defendant's cheque for $11,142.61 payable to Motor Company was duly endorsed and delivered by Motor Company to plaintiff, that this cheque would become the exclusive property of plaintiff, that title thereto should pass unconditionally to plaintiff, that such transaction constituted a sale of this cheque to plaintiff for value, and plaintiff became the owner thereof. That this cheque for $11,142.61 is complete and regular on its face; that plaintiff became the holder and owner of this cheque before it was overdue and without notice of any previous dishonor; that plaintiff took this cheque in good faith and for value; that this cheque was endorsed in blank by Motor Company and delivered to plaintiff, and was purchased by plaintiff, who at the time had no notice of any infirmity in this cheque or defect in the title of Motor Company.

There is evidence in the Record to this effect: At the close of business on 17 October 1957 Motor Company had a balance in its account with plaintiff in the amount of $712.62. On that day plaintiff had received cheques amounting to between $11,000.00 and $12,000.00 drawn on it by Motor Company. These were cheques Motor Company had mailed from Walnut Cove. Correspondent banks had mailed these cheques to plaintiff. The president of plaintiff at the close of business

that day saw the president of Motor Company, and told him if plaintiff honored these cheques, Motor Company would be overdrawn between $11,000.00 and $12,000.00. The president of Motor Company asked him how long he would give him to get the money. He replied until 12:30 p.m. the following day, when plaintiff had to pay the cheques or return them. The next morning the president of Motor Company said to the president of plaintiff: "I have got the money in sight, and I have made all the arrangements, and I will have the money here by 12:30 like you demanded it." About one o'clock p. m. on 18 October 1957 Motor Company deposited with plaintiff the cheque for $11,142.61 issued and dated that day by defendant to Motor Company as payee, duly endorsed in blank by it as payee, and received a deposit slip reciting, among other things, that "in receiving items for deposit or collection, this Bank acts only as depositor's collecting agent." This cheque is negotiable in form and regular and complete on its face. All of the proceeds of this cheque for $11,142.61 were used by plaintiff to pay cheques of Motor Company drawn on it, and which were on hand on the morning of 18 October 1957. When the president of Motor Company deposited this cheque about one o'clock p. m. on 18 October 1957, the president of plaintiff told him additional cheques of Motor Company totaling about $10,000.00 had come in. Plaintiff returned these additional cheques unpaid for lack of funds to pay them. The inference from this evidence is permissible, if not demanded, that at the time this cheque for $11,142.61 was negotiated to plaintiff, it took it in good faith, and had no notice of any infirmity in the instrument, or defect in the title of Motor Company. On 21 October 1957 defendant learned that Wachovia Bank & Trust Company had mortgages totaling $11,195.29 on the Ford automobiles it bought from Motor Company, and stopped payment on its cheque for $11,142.61 issued to Motor Company as payee. On 22 or 23 October 1957 plaintiff received notice that payment of this cheque had been stopped.

The real determinative question presented to the Trial Judge was whether plaintiff is the owner or a collecting agent of this cheque of $11,142.61. The deposit contract is a matter about which plaintiff and Motor Company had a legal right to make their own contract, so long as the rights of third parties are not injuriously affected, and it is not contrary to law or public policy. *Clark v. Butts,* 240 N.C. 709, 83 S.E. 2d 885; 7 Am. Jur., Banks, Section 442. What the contract between them is with respect to the title of this cheque depends on their intention to be determined as a fact from the evidence. *Worth Co. v. Feed Co.,* 172 N.C. 335, 90 S.E. 295; *Sterling Mills v.*

*Milling Co.,* 184 N.C. 461, 114 S.E. 756; *Denton v Milling Co.,* 205 N.C. 77, 170 S.E. 107; 9 C.J.S., Banks and Banking, p. 473. "Such intention must, however, be determined as of the date when the deposit is made, and not in the light of subsequent events." 7 Am. Jur., Banks, p. 319. "The heart of a contract is the intention of the parties." *Jones v. Realty Co.,* 226 N.C. 303, 37 S.E. 2d 906.

There can be no doubt about the fact that Motor Company and plaintiff intended, when this cheque for $11,142.61 was deposited, that the entire proceeds of the cheque should be used by plaintiff immediately upon deposit to pay the cheques of Motor Company, which plaintiff had received the day before from correspondent banks, and had no funds on deposit of Motor Company to pay, and it was so used. All the evidence plainly shows that Motor Company had no funds against which defendant's cheque could be charged back, if it was dishonored or payment upon it stopped. This cheque was for $11,142.61, and Motor Company at the close of business on 19 October 1957 had on deposit with plaintiff $274.35, and thereafter its deposit never exceeded $124.00.

Although the overwhelming majority of the courts have held that the mere crediting of the proceeds of a cheque to the account of its depositor will not, without more, make the bank a holder in due course of the cheque, it has been held or stated by a large majority of the courts that when the bank permits its depositor to withdraw completely or otherwise completely employ the proceeds of the cheque deposited in advance of collection and prior to receipt of any notice that payment of the cheque has been stopped or that there is any infirmity in the cheque or defect in the title of the person negotiating it, the bank of deposit, in the absence of an agreement to the contrary, has given value for the cheque, and is the owner of it and a holder in due course. *Bank v. McNair,* 114 N.C. 335, 19 S.E. 361; *Latham v. Spragins,* 162 N.C. 404, 78 S.E. 282; *Trust Co. v. Bank,* 166 N.C. 112, 81 S.E. 1074; *Bank v. Roberts,* 168 N.C. 473, 84 S.E. 706; *Ledwell v. Milling Co.,* 215 N.C. 371, 1 S.E. 2d 841; *Lowrance Motor Co. v. First Nat. Bank,* 238 F. 2d 625, 59 A.L.R. 2d 1164; 9 C.J.S., Banks and Banking, pp. 474-475; 10 C.J.S., Bills and Notes, Section 316b; 8 Am. Jur., Bills and Notes, Section 442; 7 Am. Jur., Banks, Section 452; Annotation 59 A.L.R. 2d pp. 1181-1184.

G.S. 25-31 provides that "where value has at any time been given for the instrument the holder is deemed a holder for value in respect to all parties who became such prior to that time." In *Bank of Sutton v. Skidmore,* 113 W. Va. 25, 167 S.E. 144, the Court said in respect to a statute similar to G.S. 25-31: "This rule also antedates the

N. I. L. Lord Ellenborough said in 1807 that when paper was left with a banker for collection, he became an agent, but, 'If the banker discount the bill or advance money upon the credit of it, that alters the case; he then acquires the entire property in it, or has a lien on it *pro tanto* for his services *(sic).' Giles v. Perkins*, 9 East, 12, 14." In our copy of English Reports, Full Reprint, 103, p. 477, 478, (King's Bench Book 32), the last word in the quotation from *Giles v. Perkins* reads *advance* instead of *services*.

Defendant contends that the notice upon the deposit slip received by Motor Company, when it deposited the $11,142.61 cheque, reciting that plaintiff acts as a collecting agent in receiving this cheque, and that the cheque is credited to Motor Company's account subject to final payment in cash or solvent credits, prevents the passing of title of this cheque to plaintiff.

The bank may waive such a provision. 7 Am. Jur., Banks, p. 326. In *Ledwell v. Milling Co., supra,* there were similar recitals in the deposit slip. The Court in awarding a new trial said: "Under the evidence in this cause it clearly appears that the draft in question was originally deposited with the appellant under a written agreement that the bank was to act as collector. This agreement being in writing, it is not subject to contradiction by proof that another and a different agreement was in fact at the time made. There is, however, evidence offered by the appellant from which a jury might permissibly draw the conclusion that after the proceeds of this draft were deposited in the appellant bank they were drawn against by the depositor and the checks were honored by the bank, and that in fact, the proceeds of the draft were actually paid to the depositor. . . . Upon a consideration of the authorities on the subject, we are of the opinion that the appellant has offered sufficient evidence to require the submission of this cause to a jury on the question as to whether the original agreement that the bank should act as collector only was thereafter waived."

In the instant case it clearly appears from the evidence that when the $11,142.61 cheque was deposited with plaintiff the agreement between Motor Company and plaintiff was that all of the proceeds from it were to be used to pay cheques of Motor Company which plaintiff had received the day before, and which Motor Company had no funds on deposit to pay, and were so used, and that Motor Company and plaintiff used the standard form of a deposit slip. Regardless of formal statements on a deposit slip such as that deposits are accepted for collection only, or that items are credited conditionally, or are subject to final payment, if the facts and circumstances surrounding

the making of the deposit indicate at the time it was made it was the actual agreement and intention of the parties that the depositor might withdraw completely the deposit, or otherwise completely employ it, and he does so, the title to the item deposited thereupon passes to the bank. *Lowrance Motor Co.v First Nat. Bank, supra; McAuley v. Morris Plan Bank of Virginia,* 155 Va. 777, 156 S.E. 418; 9 C.J.S., Banks and Banking, pp. 475-476; Annotations: 99 A.L.R. 497, 59 A.L.R. 2d 1181, 1187. "The more recent cases, however, do not regard such statements as conclusive upon the question of title; they take the position that they should be considered in determining whether the parties intended that title to commercial paper should pass to the bank, but they yield to the actual agreement of the parties as evidenced by a course of conduct or otherwise." 7 Am. Jur., Banks, p. 326. See *Universal C. I. T. Credit Corp. v. Guaranty Bank & Tr. Co.* (1958), 161 F. Supp. 790.

Considering the facts and attendant circumstances surrounding the making of the deposit of the cheque sued on and the use made of the entire proceeds of this cheque, and the recitals in the deposit slip, it was an issue of fact for the Trial Judge to determine, a jury trial having been waived, as to whether plaintiff and Motor Company intended by the actual agreement between them, when the cheque was deposited, that title to the cheque sued on should pass to plaintiff, or that plaintiff should receive the cheque as a collecting agent.

There is substantial competent evidence in the Record to support the Court's findings of fact numbered nine and ten. Such being the case, these findings of fact are as binding as the verdict of a jury, and are conclusive on appeal. *Milk Commission v. Galloway,* 249 N. C. 658, 107 S.E. 2d 631; *St. George v. Hanson,* 239 N.C. 259, 78 S.E. 2d 885.

*Trust Co. v. Raynor,* 243 N.C. 417, 90 S.E. 2d 894, relied on by defendant, is distinguishable. In that case the bank was not a holder in due course of the cheque sued on, and further the evidence was susceptible of only one construction, and that was that the bank received the cheque as an agent for collection.

The findings of fact support the first conclusion of law that plaintiff is a holder in due course of the cheque for $11,142.61. G.S. 25-58.

Subject to certain limitations, e. g., when a negotiable instrument is declared void by statute, legal incapacity to contract, fraud in the *factum,* which are not relevant to the case *sub judice,* the rule under the law merchant and also under the Uniform Negotiable Instrument Act is that a *bona fide* holder of a negotiable instrument in

due course holds a title valid as against all the world. *Reddick v. Jones*, 28 N.C. 107; *Glenn v. Bank*, 70 N.C. 191; *Ward v. Sugg*, 113 N.C. 489, 18 S.E. 717; *Bank v. Felton*, 188 N.C. 384, 391-2, 124 S.E. 849, 854; *Finance Corp. v. Rinehardt*, 216 N.C. 380, 5 S.E. 2d 138; 10 C.J.S., Bills and Notes, Sections 482, 499(b), 503, 506(a), (b), (c) and (d); 8 Am. Jur., Bills and Notes, Section 355.

As plaintiff is a holder in due course under our Negotiable Instruments Act of this cheque for $11,142.61, it holds the cheque free from any defect of title of Motor Company and free from any defense available to defendant against Motor Company, and may enforce payment of the cheque for the full amount against defendant. G.S. 25-63; *Bank v. Atmore*, 200 N.C. 437, 157 S.E. 129; *Trust Co. v. Boykin*, 192 N.C. 262, 134 S.E. 643; *Bank v. Starkey*, 190 N.C. 867, 129 S.E. 727; 8 Am. Jur., Bills and Notes, Sections 355, 356. For a similar statement of the law by this Court under the law merchant see: *Riddick v. Jones, supra; Glenn v. Bank, supra; Ward v. Sugg, supra; Bank v. Felton, supra.*

The findings of fact support the second conclusion of law that defendant is liable to plaintiff for the full amount of this cheque for $11,142.61, with interest.

The findings of fact are sufficient to support the conclusions of law, and the judgment based thereon. *Lumber Co. v. Chair Co.*, 250 N.C. 71, 108 S. E. 2d 70; *Woody v. Barnett*, 239 N. C. 420, 79 S. E. 2d 789

All defendant's assignments of error are overruled. The judgment below is

Affirmed.