WILLIAM C. DEAN *v.* EASTERN SHORE
TRUST COMPANY.

[No. 28, April Term, 1930.]

214

*Decided June 10th, 1930.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Parke, and Sloan, JJ.

*Thomas W. Simmons,* with whom was *V. Calvin Trice* on the brief, for the appellant.

*W. Laird Henry,* with whom were *Henry & Henry* on the brief, for the appellee.

Offutt, J., delivered the opinion of the Court.

William C. Dean, trading as William C. Dean & Company, bought a used automobile from one Willis S. Cannon, and gave him in payment a check dated August 20th, 1928, for

two hundred and fifty dollars, drawn on the South Dorchester Bank of the Eastern Shore Trust Company. Cannon indorsed the check and presented it to the Cambridge Bank of the Eastern Shore Trust Company, which, at his request, cashed it. Later, apparently on August 23rd, 1928, the check was presented to the drawee, but payment was refused on the ground that Dean had countermanded it. The check was then protested in due form and the maker and indorsers notified of its dishonor. The Eastern Shore Trust Company then demanded of Dean, the drawer, that he pay the check, and, upon his refusal, it brought this action against him and George W. Robinson, trading as William C. Dean & Company. It appearing later that Robinson was not a member of that firm, the case against him was dismissed, but proceeded to judgment against Dean.

The declaration contains four common counts, respectively, for goods sold and delivered, for money lent, for money paid, and for money received, and a special count, in which the facts to which we have referred are stated. A demurrer to that count was overruled, the general issue pleaded to all the counts, issue joined, and the case tried before a jury in the Circuit Court for Dorchester County. The trial resulted in a verdict and judgment for the plaintiff, and from that judgment this appeal was taken.

During the course of the trial the appellant reserved twelve exceptions, of which eight referred to rulings of the trial court on questions of evidence, and four to its rulings on the prayers.

The first question presented by the appeal is whether the fifth count of the declaration states a cause of action. In effect it alleges that the defendant issued his check, dated August 20th, 1928, payable to the order of Willis S. Cannon, for two hundred and fifty dollars, drawn on the South Dorchester Bank of the Eastern Shore Trust Company, that Cannon, having endorsed it, presented it to the "bank in Cambridge of the plaintiff, the Eastern Shore Trust Company," and requested payment of the same, that the Cambridge bank, upon being informed by the South Dorchester Bank

that Dean, the drawer, had sufficient funds on deposit in that bank to pay the check, gave to the payee, Cannon, two hundred and fifty dollars, the amount "called for in said check," that thereafter the "Cambridge Bank" presented the check for payment to the South Dorchester Bank, but that that bank refused payment on the ground that the drawer had stopped payment on it before it was presented to it for payment, and that the check was then duly protested.

These facts are undoubtedly sufficient to constitute a cause of action, if the Eastern Shore Trust Company and the South Dorchester Bank may for the purposes of this action be regarded as separate and distinct entities. A check is a negotiable instrument, Code, art. 13, secs. 204, 145 (*Uniform Neg. Inst. Act*); *Uniform Laws Ann., "Negotiable Instruments,"* sec. 185. The drawer "by drawing the instrument admits the existence of the payee and his then capacity to indorse, and engages that on due presentment, the instrument will be accepted or paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it. But the drawer may insert in the instrument an express stipulation negativing or limiting his own liability to the holder." Code, art. 13, sec. 80; *Uniform Laws Ann., "Negotiable Instruments,"* sec. 61 and case notes, sec. 185 and case notes; *Raphael v. Bank,* 45 Cal. App. 115. When regularly negotiated (Code, art 13, sec. 49), it is presumed that the holder acquired it as a holder in due course. *Ibid,* sec. 78. And when it is dishonored a right of action accrues to the holder to recover from the maker the amount which it has paid to the payee. *Weant v. Southern Trust Co.,* 112 Md. 463. If, therefore, in this case the drawee and the holder may be regarded as distinct and separate persons, the right of the holder to recover from the maker is clear and free from doubt. But if the identity of the South Dorchester Bank of the Eastern Shore Trust Company is for all purposes merged in the identity of the Eastern Shore Trust Company, a different and a more difficult question arises.

For if such is the case, when the Eastern Shore Trust Company paid the check at its Cambridge Bank, the check was discharged by payment, and the entire transaction closed.

Whether that is so is not only vital in this case, but it is a matter of some public importance, which affects the operation of branch banks and branch trust companies throughout the state. While branch banks and branch trust companies are permitted in this state (Code, vol. 1, art. 11, sec. 20; Supp. 1929, art. 11, sec. 42), the statutes authorizing them to exist and function contain no provisions fixing or defining the incidents of the relationship between different branches of a single institution or between the parent organization and its branches. They therefore are left to be determined according to the rules and principles of the common law. Under that law the relation between the parent corporation and its branches would ordinarily be that of principal and agent, and the relation between the several branches would be the usual relation between agents of the same principal. But it is obvious that the nature of the business prevents the application of the common law of agency in its full strength and extent to such institutions as banking and trust companies, and that for some purposes at least branches of such agencies must be taken as having an existence and an identity separate and distinct from that of the parent organization. The term "branch," when applied to such institutions, naturally implies the existence of an organization sufficiently complete to transact such business as is ordinarily done by a bank, such as discounting negotiable paper and receiving deposits and paying them out on demand. And, while all its branches are parts of a single organization, nevertheless, in dealing with third persons, they may properly be regarded as so far separate and distinct that, in respect to such transactions as discounting commercial paper, and receiving and paying out deposits, when so earmarked as to identify them as local to some specific, ascertained and named branch, such branch will for the purposes of that transaction be regarded as a separate and complete entity. Any other rule would not only lead to intolerable confusion and inconvenience, but

would virtually destroy the value of the privilege which the State has given to banking institutions to establish branches.

So that, while the relation between the appellee and its branches may for many purposes be that of principal and agent, the trend of authority both here and in England has been to hold that, for such transactions as that involved in this case, they are to be regarded as distinct and complete entities. *Clode v. Bayley*, 12 M. & W. 51; *Woodland v. Fear*, 71 El. & Bl. 521; 50 *A. L. R.*, 1348, 1357; *London P. & S. W. Bank v. Buzzard* (1918), 35 *Times L. R.* (Eng.), 142; *Rex v. Lovitt* (1912), A. C. (Eng.), 212; *Bank of Toronto v. Pickering* (1919), 17 Ont. Wkly. Notes 161; *Bank of Old Dominion v. McVeigh*, 20 Gratt. (Va.), 457; *McVeigh v. Bank*, 26 Gratt. (Va.), 785; *McNeill v. Wyatt*, 3 Humph. (Tenn.), 125. And, although not directly applicable to the facts of this case, chapter 454, Acts of 1929, Code, art. 11, secs. 83-99, which declares that, for the purpose of the Bank Collection Code, the term "bank" shall include a branch or office of a bank, tends to strengthen that conclusion. It follows from what has been said that, upon the facts and for the purposes of this case, the South Dorchester Bank is to be treated as a complete entity, separate and distinct from the Eastern Shore Trust Company, and that the demurrer to the fifth count of the *nar.* was properly overruled.

As to the first eight exceptions submitted by the record, it is sufficient to say that, while they were not pressed in this court, they have been carefully examined and found to be free from error.

The last four exceptions relate to the prayers. The plaintiff offered three, all of which were granted. By its first prayer the jury was instructed that, if they found the execution of the check, that the payee indorsed it, presented it to the Eastern Shore Trust Company, and requested it to "cash the same," and that it did cash it as requested, that thereafter the drawer "stopped payment" on said check at the South Dorchester Bank of the Eastern Shore Trust Company, and that it was not paid when presented to the latter bank for payment, and has not since been paid, that the

plaintiff was entitled to recover, unless the jury further found that at or before "the cashing of said check" the plaintiff had knowledge of some infirmity in the instrument or defect in the title of the payee. Its second prayer stated the measure of damages applicable to the facts of the case, and its third instructed the jury that there was no evidence in the case legally sufficient to show that the plaintiff had actual knowledge or notice of any infirmity in the check or any defect in the title of the payee thereto, or that "he had knowledge of such facts, that his action in cashing the check amounted to bad faith." Defendant excepted specially to the first prayer on the ground that the check itself was never offered in evidence, and to the third on the ground that the plaintiff did have actual knowledge of a defect in the payee's title to the check, and also on the ground that the check itself was not offered in evidence. These exceptions were also overruled.

The defendant offered six prayers, of which the first four wre refused and the fifth and sixth granted. The first three, which were demurrers to the evidence, will be discussed later; the fourth, which presented the proposition that if the check was procured by fraud the drawer had the right to stop payment on it at any time before it was actually paid by the drawee, was clearly defective, because, while the drawer would have had the right under the circumstances set out in the prayer to stop its payment to the payee, he would not have had any such right against a holder in due course without notice of any infirmity in the note or in the title of the payee thereto, without becoming liable to him for any loss due to such act. Code, art. 13, sec. 76. The appellee's first prayer correctly states the legal principle applicable to the facts of the case, and its second is a mere copy of the plaintiff's third prayer in *Weant v. Southern Trust Co., supra,* which the court in that case approved. And the rule as to damages stated in appellee's third prayer was also approved in the case last cited, as well as in *McShane v. Howard Bank,* 73 Md. 159.

Assuming that the check was in evidence, the only remaining question is whether there was in the case any evidence

legally sufficient to show that, at the time it acquired the check, the appellee had any actual notice or knowledge of any infirmity in it or defect in the title of the payee thereto, *Maitland v. Citizens' Nat. Bank,* 40 Md. 568; Code, art. 13, sec. 78; *Shpritz v. Balto. Trusl Co.,* 151 Md. 508; *Edelen v. First Nat. Bank,* 139 Md. 413. It is undisputed that the instrument was complete and regular on its face, that the holder took it within a reasonable time after its issue for value, and that it was regularly indorsed to it by the payee. And there is not the slightest evidence that the holder, at the time it cashed the check, had any notice of any infirmity inhering in it, or of any defect in the title of the payee to it. It did appear that the bank official who cashed it was told at the time that it was in payment for an automobile, and indeed the check itself so stated. But as checks are often given in payment for property, there was nothing in that circumstance alone to arouse suspicion, and, as there was no evidence of any kind tending to show that any official of the appellee at that time had any other notice or knowledge of the transaction in which the check was given, it follows that it acquired the check as a holder in due course. Code, art. 13, sec. 71.

But appellant contends that the check itself was never actually in evidence, and that therefore the appellee was not entitled to recover in this case either on it under the special or fifth count or on the common counts, and that objection was presented by special exceptions apparently filed before the court ruled on the prayers. The ground for it appears to be that the appellee failed to formally offer the check in evidence. For some undisclosed reason, the check never was in fact formally offered in evidence. But in the course of the trial it was handed to a witness on the stand, who proved the signatures of the drawer and payee, and was examined at some length as to it while he held it in his hand in the presence of the court and jury, and was cross-examined as to it at even greater length by counsel for the appellant. The appellant himself expressly stated that he had executed it and delivered it to Cannon, and it was referred to again and again in the trial of the case as though it had been formally

offered and was before the jury. To hold that under such circumstances the paper was not in evidence, and that the case should be remanded that the plaintiff might prove what the defendant conceded, would be a species of judicial ritualism which cannot be sanctioned. In dealing with a similar question, the Supreme Court of Ohio very sensibly said: "The record before us shows that the record of the judgment in Case No. 35313 was a part of the records of the court trying this case below; that said judgment was referred to by counsel for both parties; that admissions were made on the trial as to matters shown by said judgment; that witnesses testified to matters in said judgment—all without objection by either party. In such case the trial court is authorized to regard the judgment as part of the evidence in the case, although not formally offered or read by either party. *Bevington v. State,* 2 Ohio St. 160. In the case just cited the court say, on page 163: 'When an instrument in writing is produced by a party on a trial as evidence, and witnesses examined in relation to it without objection to its admissibility from the other side, it is not error for the court to regard it as in evidence, although not formally offered and read by the party producing it.'" *Zieverink v. Kemper,* 50 Ohio St. 208. To the same effect is *Jones v. Buddington,* 35 Fla. 121.

For these reasons we find no error in the rejection of the defendant's demurrer prayers, and the judgment appealed from will accordingly be affirmed.

*Judgment affirmed, with costs.*