**Texico State Bank, a Corporation, Plaintiff-Appellant, v. E. U. Hullinger, Defendant-Appellee.**

Gen. No. 10,733.

Fourth District.

September 26, 1966.

Herrick, Rudasill & Moss, of Clinton (Ray Moss, of counsel), and Kirk & Musick, of Mt. Vernon, for appellant.

Costigan & Wollrab, of Bloomington (Guy C. Fraker, of counsel), for appellee.

SMITH, J.

Plaintiff bank appeals from a judgment in its favor for $3,600 based on two checks, one for $3,500 and one for $3,000, issued by the defendant to one Sledge. Plaintiff contends it was a holder in due course of the two checks, that the jury verdict should have been $6,500, and that the court erred in denying its motion for an additur or in the alternative for a new trial on the issue of damages only. As we view it, the relevant facts are not in dispute.

On June 2, 1964, defendant Hullinger executed and delivered to one Walter Sledge his two checks for $3,500 and $3,000. Sledge took the $3,500 check to his bank, plaintiff bank, and obtained a bank draft for it. On the next day, June 3, he took the $3,000 check to plaintiff bank and received a bank draft for $2,400 and deposit credit for $600. On the next day, June 4, defendant stopped payment on both checks and the usual merry-go-

round developed. The bank drafts delivered to Sledge by the plaintiff bank entered the ebb and flow of commerce, were in the hands of holders in due course, and the plaintiff bank was required to and did honor its drafts. The demands on the defendant to honor his checks were refused.

■■ We find it difficult to understand why plaintiff is not a holder in due course of the defendant's checks and why there was any issue for a jury to try in this case. Ill Rev Stats 1965, ch 26, §§ 3–302 to 3–305, defines a holder in due course as a holder who takes an instrument (a) for value, (b) in good faith, and (c) without notice that it is overdue or has been dishonored, or of any defense against or claim to it on the part of any person. Nowhere is there any evidence in this record that this plaintiff accepted and honored these checks with any notice, express or implied, of any infirmities in them. There is evidence in the record—of doubtful relevancy and propriety—that Sledge's credit with his bank and in the community was elastic—so elastic in fact that his own checks bounced with regularity all over the place. It further appears that he ultimately went into bankruptcy—an evidentiary tidbit bearing on nothing in this record. Whatever may have been his financial record, it had nothing to do with the integrity of defendant's checks or with any notice express or implied that the defendant could not or would not honor his commercal paper or that any person had a defense against or claim to any part of them. "It is a purchaser who knows at the time of the purchase of an asserted defense, or of facts or circumstances which may create a defense who is precluded from being a holder in due course, and then on the theory of 'bad faith.'" National Currency Exchange, Inc. #3 v. Perkins, 52 Ill App2d 215, 221, 201 NE2d 668, 672. It is clear that the plaintiff as purchaser of these

two checks had no notice of any of the infirmities set forth in Ill Rev Stats 1965, ch 26, § 3–304.

It is urged by the defendant that the plaintiff is not a holder in due course. No reason is given for such an assertion—nor is any authority cited for it. Having made the assertion, it is then urged that defendant receiving nothing of value for his checks i. e., that there was a failure of consideration. The defendant testified that the two checks were delivered to Sledge as a "loan on a short promise" i. e., a promise to give back cash the next day. In our judgment, there may have been a failure of payment but no want of consideration originally. The knowledge of infirmity was not known to nor acted upon even by the defendant until June 4. It is patent from this record that his two valid negotiable instruments were then in the hands of a holder in due course. Defendant's die was cast. Both checks are bottomed on the same facts. He cannot stultify his own paper which he placed in the channels of commerce and which had reached a holder in due course before he was aware of any disabilities in his payee. He could not then retract or recall his negotiable instruments nor dishonor them with impunity.

█ Plaintiff's post-trial motion requested an additur or in the alternative a new trial on the issue of damages only. Defendant says there can be a trial on the issue of damages alone only where it appears that the damages awarded were the result of a compromise on the question of liability. This is correct. Kinsell v. Hawthorne, 27 Ill App2d 314, 169 NE2d 678. After about 3½ hours, the jury reported they were unable to agree and asked if their verdict must be unanimous. They were instructed by the court that it must be. Two hours later, the instant verdict was returned. Whether or not this was a compromise on the issue of liability or on the issue of damages is not clear. If the verdict had been for $3,000 or

$3,500 it would have indicated a vote for liability on one check and nonliability on the other and perhaps a compromise on liability. It was for $3,600 which to us indicates a liability on both checks with a compromise on the amount of damages.

█ We have already observed that plaintiff is a holder in due course. There is no legal or factual defense to this suit on this record. The trial court should have directed a verdict for the plaintiff in the sum of $6,500. It didn't. An anomalous jury verdict resulted. Plaintiff asks that the court grant an additur. This is not specifically included in the authority granted us in CPA ¶ 92 (e), Ill Rev Stats 1965, ch 110 ¶ 92(e). The post-trial motion of the plaintiff is limited to a request for additur and a new trial on damages only. We are thus limited in the relief we can grant here. The refusal to direct a verdict for the plaintiff is not preserved for review. We have no proper alternative except to reverse and remand for a new trial on the issue of damages only.

Reversed and remanded.

TRAPP, P. J. and CRAVEN, J., concur.