SUIT AND WELLS EQUIPMENT CO., INC. *v.*
CITIZENS NATIONAL BANK OF SOUTH-
ERN MARYLAND

[No. 21, September Term, 1971.]

*Decided October 14, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*William J. Boehm* for appellant.

*Thomas F. Mudd,* with whom were *Mudd & Mudd* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

This case poses the question whether, under certain circumstances, the holder of a check on which payment has been stopped can require payment by the maker.[1]

The facts which gave rise to the controversy can be briefly told. On 3 September 1966, Suit and Wells Equipment Co., Inc. (Suit and Wells) issued a check on its account at First National Bank of Southern Maryland (First National), payable to the order of Joseph F. Tayman in the amount of $4,200. The check had been given to Tayman in payment for some equipment which he had promised to deliver the following day. When the equipment was not delivered, Suit and Wells stopped payment on the check early on the morning of 6 September, the next banking day. Later that day Tayman attempted to cash the check at First National, and when payment was refused, took the check to his own bank, Citizens National Bank of Southern Maryland (Citizens National), and cashed it. Citizens National seasonably presented the check for payment, which was refused and later brought suit. From a judgment for $4,200 with interest and costs in favor of Citizens National against Suit and Wells and Tayman, Suit and Wells has ap-

---

[1]. Official Comment 8 to Uniform Commercial Code § 4-403 observes, "[i]t has sometimes been said that payment cannot be stopped against a holder in due course, but the statement is inaccurate. The payment can be stopped but the drawer remains liable on the instrument to the holder in due course * * *".

pealed. We shall affirm the judgment against Suit and Wells, but vacate the judgment against Tayman, because an examination of the docket entries discloses that service had never been made on him.

The principal thrust of Suit and Wells' argument is that Citizens National was Tayman's agent for purposes of collecting the check, and therefore could not be a holder in due course. The Uniform Commercial Code (UCC) is found in Maryland Code (1957, 1964 Repl. Vol.) Art. 95B. UCC § 4-201 is cited in support of the appellant's proposition:

> "(1) Unless a contrary intent clearly appears and prior to the time that a settlement given by a collecting bank for an item is or becomes final (subsection (3) of § 4-211—and §§ 4-212 and 4-213) the bank is an agent or subagent of the owner of the item and any settlement given for the item is provisional. This provision applies regardless of the form of indorsement or lack of indorsement and even though credit given for the item is subject to immediate withdrawal as of right or is in fact withdrawn; but the continuance of ownership of an item by its owner and any rights of the owner to proceeds of the item are subject to rights of a collecting bank such as those resulting from outstanding advances on the item and valid rights of setoff. When an item is handled by banks for purposes of presentment, payment and collection, the relevant provisions of this subtitle apply even though action of parties clearly establishes that a particular bank has purchased the item and is the owner of it.
>
> "(2) After an item has been indorsed with the words 'pay any bank' or the like, only a bank may acquire the rights of a holder
>
> (a) Until the item has been returned to the customer initiating collection; or
>
> (b) Until the item has been specially in-

dorsed by a bank to a person who is not a bank."

We conclude that Suit and Wells' reliance is misplaced. An examination of the Official Comment to § 4-201 makes it quite clear that the very purpose of the UCC provision was to create a prima facie presumption of an agency relationship and thus eliminate the distinction which had existed under the Negotiable Instruments Law (the N.I.L.) between instances where a bank was the purchaser of an item and cases where it was merely an agent for purposes of collection. Despite the UCC's presumption of an agency relationship, and the provisional character of the settlement, it is clear that there are circumstances in which a collecting bank may acquire the rights of a holder. UCC § 4-208 provides, in part:

"(1) A bank has a security interest in an item and any accompanying documents or the proceeds of either

\*　\*　\*

(c) If it makes an advance on or against the item." UCC § 4-209 continues:

"For purposes of determining its status as a holder in due course, the bank has given value to the extent that it has a security interest in an item provided that the bank otherwise complies with the requirements of § 3-302 on what constitutes a holder in due course."

A bank which cashes a check drawn on another bank has a security interest and is a holder for value, 3 Anderson, *Uniform Commercial Code* § 4.209:3 (2d ed. 1971) ; *see also Peoples Bank of Aurora v. Haar*, 421 P.2d 817 (Okla. 1966). Whether it is a holder in due course is determined by UCC § 3-302, which provides, in part:

"(1) A holder in due course is a holder who takes the instrument

> (a) For value; and
> (b) In good faith; and
> (c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

For a general discussion of these provisions, see Bunn, *Bank Collections Under the Uniform Commercial Code,* 1964 Wis. L. Rev. 278, 280; and Annotations: *Construction and Effect of UCC Art. 3, Dealing With Commercial Paper,* 23 A.L.R. 3d 932, 984-88 (1969) and *Construction and Effect of UCC Art. 4, Dealing With Bank Deposits and Collections,* 18 A.L.R. 3d 1376, 1388-91 (1968).

In the instant case, Tayman placed an unrestricted endorsement on the check, took it to Citizens National and cashed it, without disclosing that payment had been refused by First National. The check was not credited to Tayman's account but was purchased by Citizens National. Once Citizens National had advanced funds against the check, whether it was a purchaser or Tayman's agent, it acquired a security interest and became a holder in due course, if it acted in good faith and without notice of any infirmity in the instrument, *Citizens Bank of Booneville v. National Bank of Commerce,* 334 F. 2d 257, 261 (10th Cir. 1964). *Cf. Falls Church Bank v. Wesley Heights Realty, Inc.,* 256 A. 2d 915 (D. C. Cir. 1969); *Washington Trust Co. v. Fatone,* 104 R. I. 426, 244 A. 2d 848 (1968); *Peoples Bank of Aurora v. Haar, supra.*

But, says Suit and Wells, Citizens National cannot be a holder in due course because it failed to meet the test of good faith (1) when it neglected to make inquiry of First National or of Suit and Wells before cashing the check; and (2) when it cashed the check at a time when Tayman's own account at Citizens National was overdrawn and the bank was holding his past due note.

Under UCC § 1-201 (19), "'Good Faith' means honesty in fact in the conduct or transaction concerned". § 1-201 (25) provides, in part:

"A person has *'notice'* of a fact when

(a) He has actual knowledge of it; or

(b) He has received a notice or notification of it; or

(c) From all the facts and circumstances known to him at the time in question he has reason to know that it exists.

"A person *'knows'* or has *'knowledge'* of a fact when he has actual knowledge of it. * * *"

It would seem that the good faith and notice requirements of the UCC are somewhat different from the tests applied under the N.I.L., *see*, for example, *Financial Credit Corp. v. Williams*, 246 Md. 575, 229 A. 2d 712 (1967). Those who have considered the good faith requirement have concluded that the test is wholly subjective, but that the notice requirement, although subjective, has elements of objectivity, Comment, *Holder in Due Course—The Requirements of Good Faith and Notice*, 28 Md. L. Rev. 145, 153 (1968). In a situation like this one, the UCC test of notice is whether Citizens National, from all the facts and circumstances of which it had actual knowledge at the time in question, acted as a reasonable commercial bank, Note, *Notice and Good Faith Under Article 3 of the Uniform Commercial Code*, 51 Va. L. Rev. 1342, 1348 (1965).

The contentions that Citizens National should have made inquiry and that Tayman's unsatisfactory performance at Citizens National should have put the bank on notice can be readily disposed of. Here, the issue was not that of Tayman's financial responsibility, but rather that of Suit and Wells. There was testimony that Citizens Bank knew of Suit and Wells and had cashed pay checks for its employees. There is no indication that Citizens National had actual knowledge that payment had been refused by First National and nothing in Tayman's past record would have put the bank on notice of any infirmity in the check, *Citizens Nat. Bank of Englewood v. Fort Lee S. & L. Ass'n*, 89 N.J. Super. 43, 213 A. 2d 315

(1965) ; *Citizens Bank of Booneville v. National Bank of Commerce, supra. See also Waltham Citizens National Bank v. Flett,* 353 Mass. 696, 234 N.E.2d 739 (1968) and particularly *Texico State Bank v. Hullinger,* 75 Ill. App. 2d 212, 220 N.E.2d 248 (1966), which involved facts similar to those in the case before us. *See also Dean v. Eastern Shore Trust Co.,* 159 Md. 213, 150 A. 797 (1930), which, although decided under the N.I.L., reached the result which we reach. We conclude on the facts before us that the good faith and notice tests of the UCC were met.

Some point was made at argument respecting Citizens National's failure to give Suit and Wells notice that the check was dishonored. It is not clear that this issue was raised below, but even if it had been, it would hardly have been relevant.

UCC § 3-511 provides, in part:

\* \* \*

"(2) Presentment or notice or protest as the case may be is entirely excused when

\* \* \*

(b) Such party has himself dishonored the instrument or has countermanded payment or otherwise has no reason to expect or right to require that the instrument be accepted or paid;

\* \* \*."

Suit and Wells, which stopped payment, was not entitled to notice of dishonor, 1 Hawkland, *A Transactional Guide to the Uniform Commercial Code* § 2.09, at 515 (1964).

> *Judgment against Suit and Wells Equipment Co., Inc. affirmed; judgment against Joseph F. Tayman vacated; costs to be paid by appellant.*