[No. 1558-1.    Division One.    March 18, 1974.]

JOYCE SCHNITGER, *Appellant*, v. GERALD BACKUS *et al.*, *Defendants*, SEATTLE-FIRST NATIONAL BANK, *Respondent*.

*Barnett, Robben, Blauert & Pease* and *Paul W. Robben,* for appellant.

*Anderson, Hunter, Carlson & Dewel* and *Thomas R. Collins,* for respondent.

CALLOW, J.—Joyce Backus Schnitger and Gerald Backus were divorced in 1966. Under the decree of divorce, Mr. Backus was to pay child support to his former wife. He neglected to do so over a period of time and became $2,300 in arrears.

In June 1970, Mr. Backus was employed by Walter Sanford to operate Sanford's fishing boat. Within a little more than a month, Mr. Backus and Mr. Sanford delivered fish to Nelbro Packing Co., Inc.; and in July 1970, Mr. Backus went to Nelbro Packing and exercised, as a boat captain for Mr. Sanford, a right to draw on sums due from Nelbro, Nelbro being authorized to make such disbursements. He drew more than was due, however, in obtaining from Nelbro a check in the sum of $5,000. On July 20, 1970, Mr. Backus deposited this $5,000 in his personal account at the Lynnwood branch of Seattle-First National Bank and in the next 4 days wrote checks in the sum of $2,463.38. Mr. Sanford then discovered the right to draw had been overreached (the total sum due Backus being $4,393.35), informed Nelbro Packing, and payment was stopped on the $5,000 check. The Lynnwood branch of Seattle-First National Bank honored the stop payment, charged the amount to the account of Backus, and an overdraft resulted in his account.

Prior to July 29, 1970, the Seattle-First National Bank notified both Backus and Nelbro Packing of the stop payment and of the claim of the bank against the check. On July 29, 1970, the Seattle-First National Bank released the $5,000 check to Backus for return and reissuance by Nelbro Packing. The receipt signed by Backus recited "For purpose of obtaining re-issue." The check was returned to Nelbro

Packing who then reissued a $2,500 check to Backus and retained the balance due him.

Mr. Backus did not redeposit the $2,500 check in his account at the Lynnwood branch of Seattle-First National Bank; and on July 31, 1970, Mrs. Schnitger caused a writ of garnishment to be issued under the cause number of the divorce action. This was served upon Mr. Sanford to recover the past-due support money owing from Backus. Mr. Sanford answered this writ stating that he owed Backus $4,393.35 and that he, Sanford, was withholding from that amount the sum of $2,300. On September 9, 1970, Mrs. Schnitger also caused a writ of garnishment to be issued and served upon Nelbro Packing as a garnishee defendant. Nelbro Packing answered alleging that an indebtedness of $2,500 to Sanford existed subject to any right or claim of Seattle-First National Bank for any offset due to it as a result of the overdraft. On December 9, 1970, Seattle-First National Bank intervened claiming a security interest in any funds due to Backus. Motions for summary judgment were filed by all parties, and judgment was entered on behalf of Seattle-First National Bank. The summary judgment provided that the bank be granted the sum $2,472.38 on its claim in intervention against Nelbro Packing and discharged Nelbro Packing as garnishee defendant upon payment of that sum into court.

The chronology that follows may assist in understanding the succession of events which affects the rights and priorities of the parties. The dates set forth reflect the sequence of the garnishments as supported by the record.

| July 17, 1970 | A $5,000 check is issued by Nelbro to Backus. |
| July 20, 1970 | Backus deposits the $5,000 check in the depositary bank. |
| July 20, 1970 | The payor bank receives a notice of stop payment. |
| July 20-24, 1970 | Backus writes checks against his account in the depositary bank. |
| July 24, 1970 | The depositary bank receives the $5,000 check back marked "Payment |

| | Stopped." This is the first notice to the depository bank of the stop payment against the check. |
|---|---|
| July 29, 1970 | The depository bank released the $5,000 check to Backus for "reissue." |
| July 31, 1970 | A writ of garnishment is issued by Schnitger against Backus as the defendant with Sanford as the garnishee defendant. |
| August 2, 1970 | Sanford answers the garnishment stating that $4,393.35 is due Backus from which $2,300 has been deducted as the exemption to which Backus is entitled. |
| August 5, 1970 | Backus returns the $5,000 check to Nelbro. Nelbro reissues a $2,500 check to Backus and retains $2,500. |
| September 3, 1970 | Judgment for Schnitger is entered against the garnishee defendant Sanford for $2,300. |
| September 9, 1970 | A writ of garnishment is issued by Schnitger against Sanford and Nelbro as garnishee defendants. |
| September 28, 1970 | Nelbro answers the September writ of garnishment reciting that $2,500 has been paid Sanford and that a $2,500 indebtedness to Sanford is held subject to Nelbro's right to offset the same against any lien or claim of the depository bank. |

The issue presented is whether Seattle-First National Bank lost its right against the check of Nelbro Packing when it released the check to Mr. Backus for reissuance.

A line of Washington cases has held that a bank, which receives a deposited check for collection and honors the depositor's checks drawn against the credit of the deposited check exhausting the depositor's balance, thereby becomes a holder in due course as to the deposited check. In *Old Nat'l Bank v. Gibson*, 105 Wash. 578, 179 P. 117, 6 A.L.R. 247 (1919), the maker had given a check to the payee who deposited it in his account in Old National, the depositary

bank. Thereafter, the payee wrote checks against his entire balance in the bank including the credit derived through the deposit of the check. The deposited check was returned later to the bank with the notation that payment had been stopped by the maker. Old National Bank then demanded payment of the amount of the check from the maker. When payment was refused, the bank commenced action against the maker. The court held that by making advances on the credit of the deposited check the bank became a holder in due course to the extent of such advances, notwithstanding the fact that it might still have claimed the right to charge the check back to the depositor. The court found the bank to have become the owner of the check and to have a lien against the instrument to the extent of the value given. Recovery was granted against the maker. The rule has been followed in *Maury v. Toledo Logging Co.*, 163 Wash. 563, 1 P.2d 896 (1931); *Commercial Bank & Trust Co. v. Minshull*, 137 Wash. 224, 242 P. 29 (1926) and *Vickers v. Machinery Warehouse & Sales Co.*, 111 Wash. 576, 191 P. 869 (1920).

The citing of ancient tomes may give an appearance of scholarly demean but in rapidly changing technical areas such propensities should not be indulged unless the reference demonstrates that the rule in question is well reasoned and has stood the test of time. The quotation from *State Planters Bank v. Courtesy Motors, Inc.*, 250 N.C. 466, 473, 109 S.E.2d 189 (1959), is justified under that criterion to illustrate the rule as it existed under the common law and was codified under the Negotiable Instruments Law.

> [The statute] provides that "where value has at any time been given for the instrument the holder is deemed a holder for value in respect to all parties who became such prior to that time." In *Bank of Sutton v. Skidmore*, 113 W. Va. 25, 167 S.E. 144, the Court said in respect to a statute similar to [the NIL statute]: "This rule also antedates the N. I. L. Lord Ellenborough said in 1807 that when paper was left with a banker for collection, he became an agent, but, 'If the banker discount the bill or advance money upon the credit of it, that alters the case;

he then acquires the entire property in it, or has a lien on it *pro tanto* for his services *(sic)*.' *Giles v. Perkins,* 9 East, 12, 14." In our copy of English Reports, Full Reprint, 103, p. 477, 478, (King's Bench Book 32), the last word in the quotation from *Giles v. Perkins* reads *advance* instead of *services.*

*See also Lowrance Motor Co. v. First Nat'l Bank,* 238 F.2d 625, 59 A.L.R.2d 1164 (5th Cir. 1956); *Pike v. First Nat'l Bank,* 99 Ga. App. 598, 109 S.E.2d 620 (1959); *Ledwell v. Shenandoah Milling Co.,* 215 N.C. 371, 1 S.E.2d 841 (1939).

The legal relationships existing under the NIL under the circumstances presented continue to be the same under the Uniform Commercial Code. In *Universal C.I.T. Credit Corp. v. Guaranty Bank & Trust Co.,* 161 F. Supp. 790 (D. Mass. 1958), the problem was presented under the NIL in Massachusetts prior to the effective date of the Commercial Code in that state. The court concluded that when a check endorsed without restriction was received for deposit and the bank, before collecting the check, allowed the depositor to draw an amount equivalent to his previous balance plus the amount of the uncollected check, the bank was a holder for value as to the uncollected check. The opinion observed that a check is merely an order to a bank to make payment in the manner set forth, and the customer has the right to revoke the order before it is carried out. The court found that the depositary bank did not become a holder for value of the checks merely by taking them for collection; but when it went beyond granting provisional credit and allowed the depositor to draw on the credit, a lien was created in favor of the bank for any debt due by virtue of the advances. Therefore, the bank became a holder in due course to the extent of its advances. The majority rule was expressed as raising a presumption that where a bank advances credit to a customer on his drawings after the customer has deposited a check without restrictive endorsement with the bank for collection, both parties intend that the bank may look to the collection item for security up to the amount of the advances. The decision indicated the

same conclusion should follow under the UCC as under the NIL. *See Citizens Nat'l Bank v. Fort Lee Sav. & Loan Ass'n,* 89 N.J. Super. 43, 213 A.2d 315 (1965).

Under the UCC, the bank was a holder in due course of the instrument at least until the item was released to Backus for "re-issue." RCW 62A.1-201(20) states:

"Holder" means a person who is in possession of . . . an instrument . . . issued or indorsed to him or to his order or to bearer or in blank.

RCW 62A.3-302 states that a holder in due course is a holder who takes an instrument (a) for value, (b) in good faith, and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. A bank is a holder in due course of the check it has taken for collection to the extent that value has been given if qualifications (b) and (c) have been met. *Northside Bank v. Investors Acceptance Corp.,* 278 F. Supp. 191 (W.D. Pa. 1968).

When a depositor deposits checks into his account and the bank permits draws to be made against these deposits of checks yet uncollected, the presumption is that the title to the deposited checks has passed to the bank, and it has become a holder in due course for value. RCW 62A.3-302-.3-306 and 62A.4-209; *South End Bank & Trust Co. v. Nasin,* 147 Conn. 215, 158 A.2d 591 (1960); *Pazol v. Citizens Nat'l Bank.* 110 Ga. App. 319, 138 S.E.2d 442 (1964).

Both parties discuss *Peoples Bank v. Haar,* 421 P.2d 817 (Okla. 1966). The case is in conformity with our discussion holding that a bank takes a check "for value" for purposes of determining its status as a holder in due course when it acquires a security interest therein, and a security interest is acquired to the extent an advance is made on the check or to the extent credit is given when the check is deposited.

Possession is a requisite to the status of "holder in due course"; and therefore following the release of the check to Backus for reissue, the bank could not claim to be a "holder

in due course" as to another claimant who might come into possession of the reissued check. *Investment Serv. Co. v. Martin Bros. Container & Timber Prods. Corp.*, 255 Ore. 192, 465 P.2d 868 (1970). In any event, the depositary bank was a holder in due course of the item to the extent of its advances until its release of possession of the item to its customer payee on July 29, 1970.

■ However, our decision does not rest upon the status that the bank had as a holder in due course of the check from the time it advanced sums based on its credit to the time that it released the check for reissue. We base our decision instead on the acquisition of a security interest in the item which the bank gained during that period under RCW 62A.4-208. The statute reads:

(1) A bank has a security interest in an item and any accompanying documents or the proceeds of either

(a) in case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied;

(b) in case of an item for which it has given credit available for withdrawal as of right, to the extent of the credit given whether or not the credit is drawn upon and whether or not there is a right of charge-back; or

(c) if it makes an advance on or against the item.

(2) When credit which has been given for several items received at one time or pursuant to a single agreement is withdrawn or applied in part the security interest remains upon all the items, any accompanying documents or the proceeds of either. For the purpose of this section, credits first given are first withdrawn.

(3) Receipt by a collecting bank of a final settlement for an item is a realization on its security interest in the item, accompanying documents and proceeds. To the extent and so long as the bank does not receive final settlement for the item or give up possession of the item or accompanying documents for purposes other than collection, the security interest continues and is subject to the provisions of Article 9 except that

(a) no security agreement is necessary to make the security interest enforceable (subsection (1) (b) of RCW 62A.9-203); and

(b) no filing is required to perfect the security interest; and

(c) the security interest has priority over conflicting perfected security interests in the item, accompanying documents or proceeds.

This section creates a security interest in the item which exists regardless of the absence of a security agreement and of filing, which has priority over perfected security interests in the item and which lasts until final settlement. The statutorily described security interest has been outlined by legal writers in the following manner.

The Uniform Commercial Code, in Article 4, fixes the rights of a bank with respect to checks deposited with it for collection by giving the bank a "security interest" in the check where credit has been withdrawn or applied, where credit has been given available for withdrawal as of right (whether or not withdrawn) or where the bank makes an advance on or against the check. The Code, in the typical deposit credit situation, follows the majority rule under prior law; but makes special provision as to the giving of value where the depositor has received some benefit in addition to the mere entry of credit.

(Footnotes omitted.) H. Bailey, *The Law of Bank Checks* 77 (4th ed. 1969).

It has been aptly stated that under the Code a bank is given a security interest in items, accompanying documents and the proceeds of either, where it falls short of owning them outright, provided only that it does something more for the customer than giving him a mere credit on its books. Specifically, a bank is given such a security interest, first in the case of an item deposited in an account, to the extent to which credit has been withdrawn or applied; second in the case of an item for which the bank has given credit available for withdrawal as of right, whether or not the credit is withdrawn and whether or not there is a right of charge-back; and third in the case of an item on or against which the bank has made an advance. To the extent of its security interest a bank may, of course, qualify as a holder in due course.

(Footnotes omitted.) Trumbull, *Bank Deposits and Collec-*

*tions in Illinois Under the Proposed Uniform Commercial Code*, 55 Nw. U.L. Rev. 253, 270 (1960).

Although the depositary bank normally is not the owner of the item, it may nevertheless have a security interest in it, so that it may be able to hold the item or its proceeds against the depositor or his creditors and cannot be compelled to turn them over. Such a security interest arises where the depositary bank has permitted the depositor to withdraw from his account the provisional credit the bank has given to him, and the extent of the bank's security interest is the amount of the actual withdrawal [4-208(1) (a)]. . . .

. . .

A bank's security interest in a collection item, its accompanying documents and their proceeds continues until the bank receives a final settlement for the item or until it gives up the item and documents for purposes other than collection [4-208 (3)]. This security interest is subject to Article 9 of the Code, but no security agreement is necessary to make the security interest enforceable, no filing is necessary to perfect the security interest, and the security interest has priority over all other security interests in the item, documents and proceeds, even if the other security interests are also perfected.

Often a single credit is given for a number of items, and part of that credit is withdrawn. The Code provides that the transferee bank's security interest remains on all the deposited items, any accompanying documents and the proceeds of either. In determining whether a particular credit has been withdrawn, the Code adopts the "first in first out" rule [4-208 (2)].

C. Funk, *Banks and the Uniform Commercial Code* 138-39 (2d ed. 1964). *See also* H. Bailey, *The Law of Bank Checks* 80, 196-99 (4th ed. 1969); J. Clarke, H. Bailey and R. Young, *Bank Deposits and Collections* 48-53 (4th ed. 1972); B. Clark and A. Squillante, *The Law of Bank Deposits, Collections and Credit Cards* 84-90 (1970); *Falls Church Bank v. Wesley Heights Realty, Inc.*, 256 A.2d 915 (D.C. Ct. App. 1969); *Exchange Nat'l Bank v. Beshara*, 236 So. 2d 198 (Fla. App. 1970); *Texico State Bank v. Hullinger,* 75 Ill. App. 2d 212, 220 N.E.2d 248 (1966); *Suit & Wells Equip.*

Co. *v. Citizens Nat'l Bank,* 263 Md. 133, 282 A.2d 109 (1971); *Long Island Nat'l Bank v. Zawada,* 34 App. Div. 2d 1016, 312 N.Y.S.2d 947 (1970).

The contesting parties are a garnishing creditor of the depositor and the depositary bank. Their contest is over funds owed the depositor by the maker of a check deposited in the depositor's account, upon which credit was extended by substantial advances, payment of which was then stopped and which was then released to the depositor for reissue in a lesser amount by the maker. Our decision is limited to the relationship between contesting parties in the same status and under the same circumstances. Whatever issues could be raised were a party involved who had come into possession of the reissued check as a holder in due course are not before us. Further, the problem does not concern the position of a garnishing creditor or another party claiming an interest in an item before a security interest had arisen in favor of a depositary bank under RCW 62A.4-208. When the writs of garnishment were issued against Sanford as a garnishee defendant in July 1970 and against Sanford and Nelbro as garnishee defendants in September 1970, the security interest of the depositary bank in the item and its proceeds had arisen, and the bank had not released possession of the item "for purposes other than collection" or received final settlement. RCW 62A.4 -204, 62A.4-208, 62A.4-213. The security interest which the bank acquired in the item would continue until final settlement. RCW 62A.4-208; 3 R. Anderson, *Uniform Commercial Code* § 4-208:6 (2d ed. 1971). The release of the item for the purpose of collection encompassed the item in the security interest of the bank and its proceeds upon return of the item to Nelbro for reissue. Preeminence of the garnishor to the funds to which the depositary bank must look for realization on its security interest is not warranted. The

garnishor did not interject a claim entitled to superiority over the security interest of the bank.

The judgment is affirmed.

JAMES and WILLIAMS, JJ., concur.

Petition for rehearing denied June 18, 1974.