Opinion
 

 THE COURT
 

 This is a suit by Citizens Bank of Costa Mesa (formerly Bank of Costa Mesa, hereinafter Bank) against Gerard G. Losack (hereinafter defendant) for damages Bank allegedly sustained as a holder in due course. Losack gave three of his checks to Fountain Valley Appliances (hereinafter depositor) which in turn deposited them in the
 
 *290
 
 Fountain Valley checking account at plaintiff bank. Bank contends that, in reliance upon the deposits, it paid checks drawn upon its depositor’s account. Thereafter Bank received notice that defendant had dishonored the checks. Defendant contends Bank was not a holder in due course to the total amount of the checks, if at all.
 

 Statement of Facts
 

 Defendant gave depositor three checks (No. 104—$2,000, No. 105—$2,100, No. 106—$2,200) totaling $6,300 on January 8 and 9, 1975. The money so given was pursuant to a purchase agreement pertaining to a portion of depositor’s inventory.
 

 On or about January 8, 1975, Bank notified depositor that it was holding checks, drawn against depositor’s account, which it could not honor because of insufficient funds. Depositor thereupon deposited defendant’s three checks (No. 104 on January 8 and No. 105 and No. 106 on January 9).
 

 Shortly thereafter a dispute arose between defendant and depositor regarding their purchase agreement. Defendant then stopped payment on two checks and failed to transfer adequate funds to cover the third (later, this third check also had a stop payment order entered against it.) The bank president testified that when the checks were deposited Bank had no knowledge of this dispute or that the checks might not be honored.
 

 On January 16, Bank received notice of the stop payment order on two of the checks. On January 17 Bank received the insufficient funds notice on the third.
 

 The activity in depositor’s account during the month of January 1975, when the claimed loss allegedly occurred, is disputed. Bank’s president testified that upon receiving the deposits it began paying checks it was holding drawn against depositor’s accounts, totaling approximately $8,000. Defendant, relying upon depositor’s January statement of account, contended Bank did not give value in any sum in excess of approximately $1,300.
 

 The trial court found that Bank was a holder in due course. No findings of. fact or conclusions of law were requested. The court gave judgment
 
 *291
 
 totaling $6,300 together with interest (from Jan. 9, 1975) at the rate of 7 percent per annum.
 

 On appeal defendant contends that there was insufficient evidence to support the judgment and that the court erred in not excluding portions of bank president’s testimony under Evidence Code section 1500 (the best evidence rule).
 

 Discussion
 

 Because there are no findings of fact or conclusions of law, we must presume that every fact essential to the support of the judgment was proved and found by the trial court. On this state of the record every intendment is in favor of the judgment.
 
 (Bekins Van Lines, Inc.
 
 v.
 
 Johnson,
 
 21 Cal.2d 135, 137 [130 P.2d 421].) The test is whether there is substantial evidence in favor of the judgment.
 
 (Crogan
 
 v.
 
 Metz,
 
 47 Cal.2d 398, 404 [303 P.2d 1029].)
 

 Defendant urges that under Evidence Code section 412
 
 [1]
 
 the bank president’s testimony should be viewed with distrust. This is so, defendant asserts, because the testimony concerned material found in bank records which Bank did not produce at trial. However, defendant misses the mark. Section 412 pertains to trial courts. As stated earlier, the test on appeal is whether there is substantial evidence in support of the judgment.
 

 It is well settled that books of account are only secondary evidence and secondary proof .of the items therein. Oral testimony of persons having personal knowledge of transactions involved in items of accounts is best evidence of such items, if they do not result from written contract, and is primary evidence thereof, notwithstanding existence of books of account showing them.
 
 (Cowdery
 
 v.
 
 McChesney,
 
 124 Cal. 363, 365 [57 P. 221].) Moreover, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact. (Evid. Code, § 411.) This is so even though the witness is a party to the action.
 
 (Menning
 
 v.
 
 Sourisseau,
 
 128 Cal.App. 635 [18 P.2d 77];
 
 Estate of Filippi, 9
 
 Cal.App.2d 407 [49 P.2d 892].)
 

 
 *292
 
 Defendant produced no witness contradicting the testimony. Instead defendant relies upon the account statement to defeat Bank’s claim to $6,300, which, as the bank president pointed out, did not indicate the whole activity of the account. Referring to the account’s activity, Bank’s president testified “When [depositor] deposited [defendant’s] checks ... we assumed we had good funds. We paid thousands of dollars of checks. These checks (defendant’s) were returned about a week later and we then tried to protect ourselves by returning the checks we had paid; we were not permitted to do that” thus creating an overdraft of $6,000.
 

 Defendant maintains there was not substantial evidence before the trial court to establish the overdraft was caused by the return of his checks. However, the testimony of Bank’s president constitutes substantial evidence of the fact. While more precise testimony relating to the account’s activity on a day-by-day basis might have been desirable, the testimony was neither innately absurd nor impossible. The evidentiaiy conflict was properly resolved by the trial court and we therefore do not disturb that determination.
 
 (People
 
 v.
 
 Huston,
 
 21 Cal.2d 690, 693 [134 P.2d 758].)
 

 Respondent also asserts the best evidence rule precludes the bank president’s testimony concerning the account’s activity as manifest by Bank’s records. Again defendant misses the mark. The testimony was not offered as proof of a writing but instead as proof of the activity of an account. Bank’s records contained this information and, as noted earlier, the records themselves are secondary evidence to the oral testimony of one knowledgeable and responsible for the records.
 
 (Cowdery
 
 v.
 
 McChesney, supra,
 
 124 Cal. 363, 365.)
 

 Lastly, in the insufficiency of evidence vein, defendant contends depositor’s checks ón which Bank bases its case are not before the court, having been marked for identification only. The record clearly indicates the court and the parties treated them as if they were evidence. Under such circumstances, the failure to use formal words tendering evidence is not fatal.
 
 (Estate of Connolly
 
 (1975) 48 Cal.App.3d 129, 132, fn. 4 [121 Cal.Rptr. 325]; Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, § 1142, p. 1060.)
 
 [2]
 

 
 *293
 
 Having resolved the questions of evidence, we move on to the central issue of the case. This is whether or not Bank was a holder in due course. California Uniform Commercial Code section 3302 defines a holder in due course as one who takes an instrument for value, in good faith, and “without notice that it is overdue or has been dishonored or of any defense against or claim .to it on the part of any person.” Section 4209 of the same code states “For purposes of determining its status as a holder in due course, the bank has given value to the extent that it has a security interest in an item . ...” A security interest is defined in section 4208 of the California Uniform Commercial Code: “(1) A bank has a security interest in an item and any accompanying documents or the proceeds of either (a) In case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied, ...” (Stats. 1963, ch. 819.)
 

 Surprisingly, California lacks binding authority regarding this matter.
 
 Bank of America
 
 v.
 
 Universal Finance Co.,
 
 131 Cal.App. 116 [21 P.2d 147], construing section 16c of the Bank Act, involved circumstances similar to the instant case. There a bank sued the maker of a check, who had stopped payment on the check, deposited in it by the payee. The bank honored checks drawn against the payee’s account on the basis of that deposit. In relying upon the well known principle that as between two innocent parties, the burden should be borne by the one whose conduct was the primary cause of the loss, the court held: “. . . when respondent bank accepted checks drawn on the amount of the deposited check without notice of any infirmity in it, the depositary became a holder thereof in due course and for value, with a right to recover from the maker the amount called for by the instrument. . . .”
 
 (Ibid.,
 
 at pp.-124-125.) An element missing in the above cited case and present in the instant case is the initial infirmity of the depositor’s account. The issue then, is whether or not its knowledge of the infirmity in the depositor’s account changes Bank’s status as a holder in due course. We conclude it does not as hereafter explained.
 

 In a case strikingly similar, a New Jersey appellate court held that a bank was a holder in due course and the fact that its customer’s account was overdrawn at the time of the deposit did not constitute notice of an infirmity in the underlying transaction or instrument. Moreover, the court stated that lack of good faith was not shown by the fact that the bank knew its customer was considerably overdrawn in his account. The
 
 *294
 
 court concluded “the stop payment order cannot avoid liability to a holder in due course. ‘The payment can be stopped but the drawer remains liable on the instrument to the holder in due course.’ ”
 
 (Citizens Nat. Bank of Englewood
 
 v.
 
 Fort Lee S. & L. Ass’n,
 
 89 N.J.Super. 43 [213 A.2d 315, 318-320].) This case has been cited with approval in similar cases in the District of Columbia, Maryland, New York, Washington, Minnesota, and Connecticut.
 
 (Security Bank
 
 v.
 
 Whiting Turner Contracting Co.
 
 (D.C.App.) 277 A.2d 106, 108;
 
 Suit & Wells Equip. Co.
 
 v.
 
 Citizens Nat. Bank of So. Md.,
 
 263 Md. 133 [282 A.2d 109, 112];
 
 Long Island National Bank
 
 v.
 
 Zawada,
 
 34 App.Div.2d 1016 [312 N.Y.S.2d 947, 950];
 
 Schnitger
 
 v.
 
 Backus,
 
 10 Wn.App. 754 [519 P.2d 1315, 1319];
 
 St, Cloud Nat. Bk.
 
 v.
 
 Sobania Const. Co.,
 
 302 Minn. 71 [224 N.W.2d 746, 748];
 
 Laurel Bank & Trust Co.
 
 v.
 
 City Nat. Bank of Conn.,
 
 33 Conn.Super. 641 [365 A.2d 1222, 1225].) We find this authority persuasive particularly in light of the consistent holding in
 
 Bank of America
 
 v.
 
 Universal Finance Co., supra.
 

 The record indicates when Bank received the deposits it assumed it had good funds and proceeded to pay thousands of dollars of checks. When depositor’s checks were returned, Bank could not dishonor the checks drawn against depositor’s account because they had already been paid.
 
 [3]
 

 The instant case meets the criteria set forth in the Commercial Code. Bank’s qualifications, briefly summarized, are that it obtained a security interest by cashing checks in reliance upon the deposit (thus giving value), it did so in good faith, and according to the bank president’s testimony, it had no notice of any infirmity. Given this and the persuasive out-of-state authority, we conclude that the judgment must be affirmed.
 

 Judgment affirmed.
 

 [1]
 

 Section 412 reads: “If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust.”
 

 [2]
 

 Additionally, defendant’s verified answer to the complaint admits the allegations of paragraphs 6, 7 and 8 which allege execution and delivery by defendant of said checks and also incorporate by reference copies of the checks in Bank’s complaint for money.
 
 *293
 
 The negotiability or regularity of the checks is thus an uncontested fact of this case. Their not having been formally introduced into evidence is, under the circumstances, not fatal.
 

 [3]
 

 The record indicates Bank had held the checks, drawn against depositor’s account, for more than 24 hours after their presentation. It did so in reliance upon the funds represented by defendant’s checks. According to banking custom, Bank was then obligated to honor the checks so held. (See also Cal.U.Com.Code, § 3506.)